# Richmond.

## J. H. Bawden v. American Central Insurance Company, a Corporation.

November 14, 1929.

The opinon states the case.

*J. M. Perry* and *Timberlake & Nelson*, for the plaintiff in error.

*Sands, Williams & Lightfoot* and *Chas. J. Churchman*, for the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

This is a motion to recover upon a policy of fire insurance, in which there was a verdict for the plaintiff, Bawden, which the trial court set aside and entered judgment for the defendant company.

The controlling facts are: The defendant issued its policy to Bawden in the sum of $2,000.00. The gross amount of such insurance placed upon the property at the same time was $17,500.00. The property covered was the buildings known as the Mt. Elliott Springs, or old Variety Springs, hotel, in Augusta county, together with the furniture therein. The assured, with one Mrs. F. L. Mehnert, had purchased the entire real and personal property from J. Miller Porter in 1923, at the price of $10,000.00. Each contributed $500.00, and for the balance of the purchase money, $9,000.00, assumed an existing lien, spoken of as the "Crockett" or "Timberlake" trust, for the approximate sum of $2,000.00, and executed a new deed of trust to R. E. R. Nelson, trustee, to secure $7,000.00, the amount of deferred purchase money due to their vendor, J. Miller Porter. The vendees thereupon operated the property as a summer hotel, but in 1925 Mrs. Mehnert sold her interest to Bawden at the approximate price of $1,000.00.

After Bawden became the owner of the entire property, the hotel was operated as a summer hotel by his wife, the assured being an office manager employed in a department store in Roanoke, Va. During the summer of 1927, Bawden became acquainted with Mr. J. Francis Porter (who should be distinguished from J. Miller Porter, the former owner of the property) manager of the insurance department of the Roanoke Securities Corporation, which conducted both a loan and an insurance agency business, and endeavored to procure a loan of $12,500.00 upon the Mt. Elliott

property, real and personal. According to this Mr. Porter, Bawden represented to him that with repairs, additions and improvements the property had actually cost between $18,000.00 and $20,000.00, and had been appraised at $24,000.00. The fire insurance policies thereon amounting to about $20,000.00 were then about to expire, and as an inducement to Porter to make the loan, Bawden offered to place the insurance thereon through the Roanoke Securities Corporation agency. Porter did not succeed in placing the loan, but having visited and examined the property was satisfied to issue this and other fire insurance policies thereon, aggregating $17,500.00. On December 13, about 8 o'clock in the morning, fire, the origin of which is unknown, destroyed the insured buildings and furniture. At this time the principal of the debts to which we have referred was past due, and instalments of interest thereon due November 1st was likewise in arrears. Bawden had been notified by Porter that he was unable to secure the desired loan, and Bawden having failed to pay the insurance premiums due upon the insurance policies so placed, was by the agent extended time for such payment until November 15th, and having failed to pay on that date had been advised that unless the premiums were paid on or before December 15th all the policies would be cancelled.

On Saturday, December 11th, Mrs. Bawden, having closed the Mt. Elliott hotel in September and returned to Staunton, was informed by a Mrs. Argenbright that the Mt. Elliott Springs property had been advertised for sale; whereupon she called her husband by telephone at Roanoke, and was told by him to see Mr. S. D. Timberlake, he as executor being the holder of the Crockett debt of $2,000.00, and also the copartner in the practice of law of Mr. Nelson, the trustee in

the second or J. Miller Porter $7,000.00 deed of trust. On the following day, Bawden wrote this letter:

"Roanoke, Va., December 12, 1926.

"Mr. S. D. Timberlake, Jr.,

"Staunton, Va.

"Dear Mr. Timberlake:

"In a 'phone conversation with Mrs. Bawden yesterday she advised me that the Mt. Elliott Springs hotel property has been advertised for sale in the Staunton paper. This is considerable of a shock to me and also to her, as neither of us have had any word from any source that such action was contemplated, and as you understand the circumstances under which we have labored during the past year, I am writing to inquire if there is not some way in which this can be fixed up and a new contract written, as per our last conversation relative thereto, I shall appreciate your writing me the particulars and giving any helpful suggestions. As you know, I have tied up quite a bit of cash in the property and it means a decided loss to me to put this property up for sale at this time of the year.

"Thanking you kindly for your past favors and feeling assured that you will do what you can in the matter, I am

"Yours very truly,

"J. H. BAWDEN.

"P. S.—Will be in position to take care of balance of interest due you inside next two weeks.

"B."

The policy provided: "Notice accepted of lien, and loss, if any, shall be held payable to R. E. R. Nelson, trustee, as per mortgage clause attached," and recognizing the validity of this provision and their obligations, the $7,000.00 lien was satisfied by the insurance

companies who had written the policies upon the property, but they declined to pay the additional amount claimed thereunder by the assured, Bawden.

The policy also had this provision: "Existing lien on building and furniture representing balance of purchase money shall be without prejudice of this policy."

There were several reasons assigned as grounds of defense. It was contended that the plaintiff had concealed or misrepresented material facts or circumstances concerning the insurance, and had been guilty of false swearing in the proofs of loss filed by him after the fire; and that the actual cash value of the property was far less than the plaintiff then claimed, and there is testimony as to these contentions; but the only defense which we deem it necessary to discuss and determine is that which is based upon the clause of the policy whereby it is provided, among other things, that "this entire policy shall be void, unless otherwise provided by agreement in writing added hereto, * * * if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property insured hereunder by reason of any mortgage or trust deed."

By way of contrast with this provision, which relates directly to the company and to the assured, Bawden, it is also provided that "the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property * * *."

The trial court, in setting aside the verdict of the jury, was of opinion that the policy had been avoided because the premises insured had been advertised for

sale with the knowledge of Bawden. In our view of the case, it is only necessary for us to consider this question.

The errors assigned are:

"First: The trial court erred in instructing the jury at the request of the defendant that the policy was void and your petitioner was not entitled to recover thereunder, if, previous to the fire, he knew that his property was advertised for sale under a trust deed, although he may not have known under which deed of trust the advertisement was being made."

"Second: The trial court erred in setting aside the verdict as contrary to the law and the evidence and in entering judgment for the defendant."

The property had been advertised on December 10th, by R. E. R. Nelson, under the $7,000.00 deed of trust, before the fire on December 13th, the principal of the debt being overdue and the current interest having been in default since November 1st. The question is whether Bawden, the assured, had knowledge that notice had been given of the sale of the insured property under the trust deed.

The letter of the assured to Mr. Timberlake, which has been quoted, clearly shows that he had received information from his wife as to the advertisement of sale of the property, and that he connected that information directly with the past due debts secured by the two deeds of trust, one of which was held by Timberlake, executor, and the other of which, due to J. Miller Porter, was secured by a deed of trust to Mr. Timberlake's law partner, Mr. R. E. R. Nelson, as trustee. The letter is based upon his knowledge that his property had been advertised to enforce the liens thereon, and is an appeal to Mr. Timberlake for aid and counsel in his financial distress immediately caused

by the advertisement. This, among other things, appears in his testimony:

In answer to a question quoting a part of the letter, and closing: "In other words, did you think that he was foreclosing under that deed by reason of it being past due?" he said:

"I wrote to Mr. Timberlake because I knew Mr. Timberlake and had never met Mr. Nelson up to that time, and knew if Mr. Timberlake could do anything to straighten the matter up he would be glad to do it. I did not know whether it was Mr. Nelson's action, or Mr. Timberlake's, but wrote to Mr. Timberlake, knowing he would help me straighten it out.

"Q. You knew the Crockett debt and the Timberlake debt were past due?

"A. Yes, sir.

"Q. You had laid yourself liable to foreclosure on both because they were past due?

"A. I knew they were past due, but knew I had had the conversation with Mr. Timberlake and was expecting to straighten this up with him when I came up in the Christmas holidays. I knew no such action was contemplated, because I had had the conversation with him."

Among other answers, he says:

"Q. The letter speaks for itself, but I am asking you of your intention?

"A. My intention was to save the property by having a new contract written. I did not know whether he was foreclosing or Mr. Nelson, but I wrote to him, knowing him and not knowing Mr. Nelson.

"Q. So that, as I understand from your answer to the question, you did not know whether Mr. Nelson was foreclosing or Mr. Timberlake, but you were writing over there to find out and to get the matter settled up if you could?

"A. I did not know whether it was a foreclosure proceeding or what it was. I was writing for information and to get it straightened up if there was any possible way.

"Q. What did you mean a while ago when in answer to my question you said you did not know whether he was foreclosing or Mr. Nelson?

"A. We had just been talking about foreclosure and it was in answer to your question I stated foreclosure. There is nothing in the letter about foreclosure.

"Q. In point of fact, I asked you what you thought. Your answer was you did not know whether Mr. Nelson or Mr. Timberlake was foreclosing?

"A. You had just said something about foreclosure proceedings and asked me about that. You did not refer to the letter at the time.

"Q. That is all the explanation you want to make; that the reason you wrote to Mr. Timberlake was you did not know whether he was foreclosing or Mr. Nelson?

"A. The reason I wrote to Mr. Timberlake was as I stated, I had no definite information and was writing for information and get it fixed up. If the sale had been advertised, I wanted to save the property. I had quite a bit of money tied up and if there was any possible way to have the contract rewritten and start out afresh I wanted to do it. I wanted to save the property."

The legal question raised is discussed in a note to *Hole* v. *National F. Ins. Co. of Hartford, Conn.*, 122 Kan. 328, 252 Pac. 263, 50 A. L. R. 1117.

Some policies provide for avoiding the policy in such cases, without any reference to the knowledge of the assured, but the validity of such a provision, whether

conditioned on the knowledge of the insured or not, seems to be universally recognized by the courts, and numerous cases are there cited.

It is contended for the plaintiff in error that inasmuch as policies of insurance are always construed by the courts most strongly against the insurer and in favor of the assured, the knowledge of the assured that notice of the sale is given must be actual knowledge—information so very minute and circumstantial that the assured receiving it thereby acquires complete and real knowledge. For this he cites 4 Joyce on Ins., 2270-a, and quotes therefrom thus: "The words 'knowledge' and 'notice' in the clause avoiding the policy, if with the knowledge of the assured foreclosure proceedings be commenced or notice given of sale of the property by virtue of any lien or encumbrance, qualify said condition, and are construed against the insurer and mean actual knowledge and actual notice, and the words are not synonymous."

This from *Brown* v. *Conn. F. Ins. Co.*, 197 Mo. App. 317, 195 S. W. 62, 65, is quoted in the brief: "Knowledge is information, meaning having information as to a fact. Viewing the word 'knowledge' in the case of the insurance policy in question, in the light of these definitions, the clause applies where the insured has actual knowledge of the foreclosure proceedings having been commenced or notice given of the sale of the property under a deed of trust. In that case the uncontradicted testimony was that the assured had neither knowledge nor notice that the property had been advertised for sale until after the fire.

It is conceded in the reply brief that the provision is valid, but it is earnestly contended that under the facts of this case the assured did not have that circumstantial knowledge or notice which it is claimed it

is essential that the defendant company must show before the policy is avoided.

In the case cited in the note to the statement in 4 Joyce on Insurance, section 2270-a, *Funk* v. *Anchor F. I. Co.*, 171 Iowa 331, 153 N. W. 1048, it was affirmatively found that there was no evidence that the assured in that case had any knowledge of the commencement of foreclosure proceedings.

This from *Delaware Ins. Co.* v. *Greer* (1903), 120 Fed. 916, 920, 57 C. C. A. 188, 61 L. R. A. 137, in discussing a similar proceeding, seems to us to be sound and conclusive: After referring to what seems to be the meticulous construction such as is here contended for by the plaintiff in error, it is said: "It is plain that the effect of such a construction is merely to cancel this provision of the policy, for defendants in foreclosure proceedings are seldom informed of the time and place of their commencement at the time or before they are begun. Contracts of insurance, however, are not made by or for casuists or sophists, and the obvious meaning of their plain terms is not to be discarded for some curious, hidden sense, which nothing but the exigency of a hard case and the ingenuity of an acute mind would discover. Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used; and, if they are clear and unambiguous, their terms are to be taken in their plain, ordinary and popular sense."

The reason for the rule is thus well stated in 4 Joyce on Insurance, section 2270-a: "It is generally conceded that as a rule, in case foreclosure proceedings are commenced because of inability to redeem, the temptation is increased to realize upon the property by destroying it, and from the funds obtained thereby

to pay off the encumbrance and, therefore, the moral hazard in such cases has become an important consideration with insurers as it has an appreciable effect upon losses and consequently upon the insurance business, and furnishes an important consideration in determining whether such risk shall be continued."

Analyzing the facts of this case, it is shown then that there were these two deeds of trust, and upon the debts secured thereby the assured was in default on both as to principal and interest. Timberlake controlled one, his law partner, Nelson, was the trustee in the deed which secured the other, and when notified by his wife that his property was advertised for sale, it is manifest from his letter that Bawden also knew that it was advertised for sale under one or the other of these deeds of trust. The only fact which he did not know was which trustee had advertised it. But the policy does not require that he shall have knowledge of the advertisement under any particular deed of trust where there is more than one. It is only necessary that he shall know that the insured property has been advertised under any deed of trust. The court in this case so instructed the jury, telling them clearly that if he knew the property had been advertised under either of the deeds of trust, it was entirely immaterial whether or not the plaintiff knew under which deed of trust the property had been advertised. The jury disregarded this instruction, and the testimony, and found for the plaintiff.

This court has gone as far as any court in enforcing insurance policies in favor of the assured, and resolving all fair doubts in favor of the assured in such cases, but this proper rule cannot be so extended as to disregard valid provisions of the contract. This provision is valid, it is wise in purpose, clear in mean-

ing; it is in the interest of the public; it expresses and constitutes the contract.

The trial court rightly determined, under the evidence, that the assured, Bawden, had knowledge that his property had been advertised for sale under a deed of trust, and this knowledge, by the express terms of the policy, avoided it.

The case has been correctly determined.

*Affirmed.*