# Wytheville

JAMES J. HARTMAN v. MELFA BANKING COMPANY, INC., ET ALS.

June 14, 1934.

Present, All the Justices.

The opinion states the case.

*Elmer W. Somers* and *Ernest Ruediger*, for the appellant.

*J. Brooks Mapp* and *J. F. Walter*, for the appellees.

Holt, J., delivered the opinion of the court.

In 1927 seven notes, purporting to have been executed by W. H. Rosse and J. J. Hartman, were discounted by the Melfa Banking Company, Incorporated, of Melfa, Virginia. Their proceeds were used by Rosse. Hartman took nothing. They differ only in dates, dates of maturity and amounts. This is a copy of one note:

"$300.00                    Melfa, Va., Aug. 11, 1927.

"Four months after date for value received we promise to pay to the order of The Melfa Banking Company, Incorporated, Melfa, Virginia, three hundred . . . no/100 dollars, negotiable and payable at The Melfa Banking Company, Incorporated, Melfa, Virginia.

"The makers and each endorser of this note hereby waive presentment, demand, protest and notice of dishonor and each of said makers and endorsers hereby waive the benefit of the homestead or any other exemption as to this debt. If default be made in the payment of this obligation, we, the makers and endorsers, hereby agree to pay ten per centum additional as attorney's fees and we hereby constitute B. D. Ayres and Jeff F. Walter our attorneys in fact for the purpose of and hereby authorize either of them in the event of such default, to confess judgment against us in the clerk's office of the Circuit Court of Accomac county, Virginia, in favor of the holder of this note, for the amount then due thereon and the costs, including the attorney's fees herein provided for. This note is given for money lent.

"W. H. Rosse,      (Seal)
"J. J. Hartman,      (Seal).

"No. 10648 due Dec. 11."

Under a joint agreement of date February 14, 1930, the Melfa Banking Company was merged into and consolidated with the Eastern Shore Banking Company, the name of the new or consolidated corporation being Eastern Shore Banking Company. This contract of merger

was approved by the State Corporation Commission on
March 4, 1930, and as approved, was filed in the office
of the clerk of the Circuit Court of Accomac county on
March 13, 1930.

In said clerk's office on the 5th day of April, 1930, this
judgment by confession was entered:

### "In Debt

"The Melfa Banking Company, Incorporated, plaintiff,
"against
"W. H. Rosse and J. J. Hartman, defendants.

"Judgment by confession, in favor of the plaintiff,
against the defendants, for two thousand three hundred
and nine dollars and forty-nine cents ($2,309.49) with in-
terest on $192.37 part thereof from the 10th day of De-
cember, 1929, till paid, and with interest on $350.00 an-
other part thereof from the 23rd day of December, 1929,
till paid and with interest on $300.00 another part thereof,
from the 11th day of December, 1929, till paid, and with
interest on $400.00 another part thereof, from the 28th day
of December, 1929, till paid, and with interest on $400.00
another part thereof, from the 4th day of December, 1929,
and with interest on $242.12, another part thereof from
the 10th day of December, 1929, till paid, and with interest
on $425.00 the residue thereof, from the 17th day of Febru-
ary, 1930, till paid, and its costs by it about its suit in this
behalf expended. And the said defendant in mercy, etc.
This judgment is 'upon instruments waiving the home-
stead exemption.' The plaintiff releases on said amount
of $192.27 as follows:

July 26, 1928, $8.50, Aug. 24, 1928, $25, Nov. 7, 1929,
$33.35.

"Plaintiff's costs:
"Clerk circuit court.....................$  3.25
"Tax ...............................   2.00
"Attorney-in-fact, collection charges.....  231.29
                                        _____
                                        $236.19"

On May 3, 1931, Hartman filed his bill in chancery in which he charged that his signature to these notes was a forgery and prayed that the judgment of April 5th be set aside and annulled. The Melfa Banking Company answered denying all charges of fraud.

Hartman asked for an issue out of chancery. His request was denied and the cause was heard by the presiding judge who heard evidence in open court.

On June 24, 1932, there was entered a final decree for the defendant. The court was of the opinion that the plaintiff had failed to prove his case and ordered that the cause be stricken from the docket.

■ The right of the Melfa Banking Company to take this confession is not challenged in the petition for appeal and so it would seem to be conceded that this right was not affected by consolidation. However that may be, the issue was not raised and so we shall not consider it. *Puckett* v. *Commonwealth,* 134 Va. 574, 113 S. E. 853; *Loughran* v. *Kincheloe,* 160 Va. 292, 168 S. E. 362.

■ When a case is heard by a judge in open court without the intervention of a jury his judgment upon a conflict of evidence has the same weight as the jury's verdict (*Seventh St. Gar. Co.* v. *Mercer,* 150 Va. 269, 142 S. E. 350), and this is true in chancery where the evidence is given in open court.

Hartman said that his purported signatures were forgeries and two witnesses say that they heard Rosse in substance admit it.

For the appellees there was evidence showing or tending to show that Hartman and Rosse were intimate personal friends, and that Hartman from time to time signed notes for Rosse although he kept no record showing the extent of such transactions, and when the matter was taken up with him he admitted that he was on a number of such notes but was surprised by their amount. He was unwilling to join in any prosecution of Rosse for forgery. Rosse said that all of the disputed signatures were genuine. In this conflict the trial judge was of the opin-

ion that Hartman had not made out a case, and so decreed. If this were all, under well established rules, we would have to affirm his decree.

On June 27, there were found in the courtroom of the trial court these two letters:

"A. T. Hickman,      W. T. Elliott,      W. N. Drummond,
   President              Cashier              Asst. Cashier

"EASTERN SHORE BANKING COMPANY,
Incorporated.
"Keller and Painter, Va.

"Painter, Va., March 28, 1930.

"Mr. Jeff F. Walter,
"Onley, Va.

"*In re: Notes*—
"W. H. Rosse—

| | |
|---|---|
| 11/23/27 | $400.00 |
| 10/10/27 | 242.12 |
| 11/17/27 | 125.32 |
| 8/11/27 | 300.00 |
| 10/17/27 | 425.00 |
| 8/23/27 | 350.00 |
| 10/28/27 | 450.00 |

"Dear Jeff:

"I had one long conversation with one J. J. Hartman this morning, who positively states that he knew nothing of his signature on these notes. He did say that one for $400 and the other for $300 were originally signed by him (notes we have are renewals), but further than that he knew nothing about them, and thought those had been paid. The other notes, he states, he positively did not sign.

"I had him before Waters, and he practically made Waters admit that he knew they were not his signatures.

"Fear if we went to court we would be a rather bad looking spectacle before a jury with our own cashier

forced to admit that he had knowledge that these were not Hartman's signatures, even though Rosse told him so.

"You will recall that we compared Hartman's signature with other notes in the bank that were genuine, the other day, and that there was some similarity. However, at his request this morning we compared them again, and I fear we are going to have a hard job making any proof of our case, especially so unless Waters will make a positive witness that he thought they were genuine, which I fear he will not be able to do.

"I am writing Rosse, as per copy herewith, and shall be glad to have you advise me your opinion as to whether we should go to the expense of getting judgment and attempting to make collection. In the meantime, if I hear from Rosse I will let you know.

"Mr. Hartman had a life insurance policy issued on Mr. Rosse, for his benefit, at time the $700 loan was made. Whether or not that would be evidence I will have to leave to you.

"Yours sincerely,
"A. T. Hickman, *President*."

"March 28, 1930.
"Mr. W. H. Rosse,
"Exmore, Va.
"*In re:*
"Notes: 11/23/27      $400.00
             10/10/27       242.12
             11/17/27       125.32
              8/11/27        300.00
             10/17/27       425.00
              8/23/27        350.00
             10/28/27       450.00
"Dear Sir:
"You, of course, are familiar with the maturity of the above notes, and know that they are way past due. These notes are signed by J. J. Hartman and you as co-makers.
"Mr. Hartman disclaims knowledge of his signature on

these, and says that he did not put it there. It seems to me that this is a broad assertion, and before proceeding lawfully to collect these loans I should like to have an opportunity to talk with you.

"If you will come to my office in Painter some day, calling me before you leave home to be sure I am there, I shall take pleasure in going over this matter with you.

"Yours very truly,

"CC—Mr. J. F. Walter                    President.
·"ATH:FL"

Hartman immediately, upon the discovery of these letters, filed a petition asking that the cause be reopened. The prayer of the petition was denied by decree entered on the next day, June 28th. Mr. A. E. Hickman was president of the old Eastern Shore Banking Company, Inc., and was president of the new consolidated bank. These notes of course came under his observation and within twelve days after the certificate of merger had been filed he wrote this letter to Hartman:

"March 25, 1930.

"Mr. J. J. Hartman,
"Melfa, Va.
"Dear Sir:

"We are calling your attention to the following notes bearing your signature, together with that of W. H. Rosse:

"November 23, 1927 . . . . $400.00
October 10,        "   . . . .  242.12
November 17,    "   . . . .  125.32
August 11,         "   . . . .  300.00
August 23,         "   . . . .  350.00
October 17,        "   . . . .  425.00
October 28,        "   . . . .  450.00

"You will readily agree that these notes are unreasonably past due, and unless settlement is made for them within the next five days we will be obliged to confess judgment. In order to save this expense we shall be glad

to have you take care of these notes in some satisfactory manner within that time."

In response to this threatening letter, Hartman called, and on March 28th Hickman "had one long conversation with" him. Signatures were compared and as a result of that comparison he was of opinion that "we are going to have a hard job making out any proof of our case," unless Waters would swear to their genuineness, and Waters had just "practically" admitted that they were forgeries. Hickman himself, in an examination theretofore made, had thought that there was "some similarity" between the disputed signatures and those admitted to be genuine; but this qualified faith in their authenticity evidently was lost upon the comparisons made in Hartman's presence. In his testimony he said that Hartman had admitted the signatures to the $400 note and to the $300 note. That is not supported by his letter. He said that Hartman admitted that he had originally signed notes for those sums but thought they had been paid. The particular notes were renewals and Hartman made no admission as to them. He had no confidence whatever in his ability to make out a case "unless Waters will make a positive witness that he thought they were genuine, which I fear he will not be able to do." What right did he have to hope that Waters would so testify when he had just admitted that these signatures were forgeries? In other words, it is perfectly clear that on March 28th, Hickman believed that the notes authorizing a confession of judgment were, so far as Hartman was concerned, forgeries. And yet on April 5th, with no new light to guide him, he took a confession which he must have believed he had no right to take.

What of Waters who admitted that they were forgeries? He was cashier of the Melfa branch of the Eastern Shore Banking Company and had been cashier of the Melfa Banking Company. On re-direct examination he was asked, "I am going to show you the seven notes in question. The signatures to those two receipts, show you

the signatures to these notes, and will ask you to please state whether or not, to the best of your knowledge and belief, the name of J. J. Hartman on each and every paper before you was written by the same person. I will show you also the signature of J. J. Hartman to an affidavit for the release of a deed of trust." He answered, "They look like the same writing to me." He did the very thing which his president feared he would not do—he shifted his position and testified to his belief in the genuineness of the signatures when he admitted to Hickman that he knew they were not genuine.

This is his testimony on direct examination:

"Q. Did you show him all of these seven notes here now in evidence *instituting* the basis of the judgment in question here?

"A. Yes, sir, he saw every note.

"Q. What did he say to you with reference to them?

"A. He said he hadn't signed all of these notes, but he had been signing some for Mr. Rosse from time to time, but he hadn't signed this many.

"Q. Did he tell you positively he hadn't signed those particular notes?

"A. He didn't say positive about that."

What light had broken upon him as he journeyed to Damascus we do not know.

This is something more than after-discovered evidence. It is evidence that the confession relied upon was taken in bad faith and at a time when the executive officers of the bank believed that it was taken in bad faith.

The confession should be set aside. The question of forgery can then be threshed out before a jury, if the bank sees fit to prosecute its claim.

*Reversed.*