# Richmond

## W. P. HUNTER v. T. C. HOLLINGSWORTH AND OTHERS.

January 16, 1936.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and
Eggleston, JJ.

The opinion states the case.

*C. O'Conor Goolrick* and *A. W. Embrey, Jr.,* for the plaintiff in error.

*Hughes, Little & Seawell,* for the defendants in error.

HOLT, J., delivered the opinion of the court.

In issue here is the time within which notice of an accident must be given to an insurance carrier, where the policy of insurance calls for immediate notice.

C. T. Hollingsworth, of Fredericksburg, Virginia, was insured against accidents in the sum of five thousand

dollars by the Employers Liability Assurance Corporation of London.

At about half past four on the morning of July 24, 1931, his automobile, a sedan which he was driving, slipped from the road, overturned, and his guest, William P. Hunter, was hurt. This is his account of how it came about:

"On Thursday, July 23, I had invited Dr. and Mrs. W. P. Hunter, Mr. Charles Beckman and Fred Humbie to accompany me to Orange, Va., to attend the horse show. I drove my car to Orange and after the horse show we had attended a dance after which we were going to drive to Culpeper, rest awhile and then come back to Fredericksburg. At about 5:30 A. M. I was driving about five miles from Culpeper, making about fifty miles per hour—Mr. and Mrs. Hunter and Mr. Humbie were on the rear seat and Mr. Beckman was on the front seat with me—It had been raining and the road was wet and narrow. In some manner my car slid off the hard surface on a red clay shoulder and before I could get back on the hard surface it turned over.

"During the course of the trip both going to and returning from Orange no one in the car had said anything to me about the manner in which I had been operating the car and at the time of the accident I was driving the same as I had been all the way—Neither myself nor anyone in the car had been drinking. I did not make any report of this accident to the insurance company prior to September 15 because I had no intimation that anyone in the car would make any claim against me. Dr. Hunter was the only one in the car injured and I now understand from other sources that he contemplates bringing suit against me."

On May 5, 1932, Dr. Hunter filed in the Corporation Court of the City of Fredericksburg notice of motion for judgment against Hollingsworth. Gross negligence was not specifically charged. He said, "You operated your said automobile in a reckless, negligent and careless manner, at an excessive rate of speed, over the said highway,

which was wet and slippery, and due to your negligence you lost control of your automobile and ran the same off the highway which caused the automobile to turn over and injure the said William P. Hunter."

Hollingsworth did not appear, and on the 25th of June, 1932, judgment was entered against him in the sum of eight thousand dollars. On the eighth day of July, 1932, *fieri facias* issued thereon, addressed to the sergeant of the city of Fredericksburg, and on July 8, 1932, was returned "no effects." On June 13, 1932, Dr. Hunter filed his suggestion for garnishment against the assurance company. On it there was no return.

On the fifth of January, 1933, *fieri facias* issued thereon, addressed to the sergeant of the city of Richmond, who on January 17, 1933, returned the same "no effects." On January 13, 1933, garnishment summons against this assurance company, addressed to the sergeant of the city of Richmond, issued and was executed on January 17, 1933, by delivering a copy thereof to the Secretary of the Commonwealth of Virginia. On April 28, 1932, that company answered (1933 must have been meant, for the answer was sworn to on April 17, 1933) :

"Third: That by one of the clauses of said policy of insurance it is provided, among other things, as follows:

" 'Upon the occurrence of an accident covered by this policy the assured shall give immediate written notice thereof to the corporation or its duly authorized agent.'

"Said stipulation is a reasonable and valid condition and necessary to the proper fulfillment of the contract of insurance.

"By the statement of the notice of motion for judgment in the case of *Wm. P. Hunter* v. *T. C. Hollingsworth,* it is alleged that an accident occurred on or about July 24, 1931, in consequence of which the said Wm. P. Hunter sustained severe personal injuries. No immediate written notice of said accident, however, was given to this defendant or its duly authorized agent by the said T. C. Hollingsworth, and in fact the said T. C. Hollingsworth

wholly neglected, failed and refused to give such notice until on or about the following September 16, 1931. This defendant therefore alleges that such neglect, failure and refusal upon the part of the said T. C. Hollingsworth constitutes a breach of the contract, in consequence of which this defendant is relieved from any and all liability on account thereof.

"Fourth: That by another clause of the said policy of insurance it is *proved,* among other things, as follows:

" 'Co-operation.—C—The assured, when requested by the corporation shall aid in effecting settlement, in securing evidence and the attendance of witnesses, in defending suits, and in prosecuting appeals, and shall at all times render to the corporation all co-operation and assistance in the assured's power. The assured shall not voluntarily assume any liability, settle any claim or incur any expense, except at the assured's own cost, or interfere in any negotiations for settlement or legal proceeding, without the consent of the corporation previously given in writing, but the assured may provide, at the expense of the corporation, such immediate medical or surgical relief as shall be imperative at the time any such injuries are sustained.' "

Just why Hollingsworth permitted judgment to go against him by default does not appear. It is possible that he may have thought he was covered by insurance, and it is possible that he may have known that an execution against him would be unfruitful. Certainly gross negligence was a debatable question. However that may be, at the hearing of this proceeding, this stipulation was entered into:

"By agreement of counsel for both plaintiff and defendant, all matters of law and fact are submitted to the court for its decision, a jury being waived."

A copy of Hunter's motion for judgment against Hollingsworth was sent to the company. That company was not notified of the accident until September 16, 1931. On November 25th following it wrote disclaiming liabil-

ity because of delay in notice. After this disclaimer, co-operation was not required. Therefore, the issue simmers down to this:

Was immediate written notice of the accident within the purview of the policy's stipulation given to the insurance carrier?

Hollingsworth took Hunter to Mr. Borst's home, which was about thirty miles from Fredericksburg where they both lived, and remained there with him for several days. He went with him to Dr. Kelley's office, was present during that physician's examination, and knew its results. He was Hunter's intimate friend and saw him several times after their return to Fredericksburg. He visited him in his home in that city, knew that he was still suffering some pain from the accident, and that because of it he was kept for weeks from his office.

Dr. Hunter, who was a dentist, testified to these facts:

This party was on its way back to Fredericksburg from Orange. Plaintiff's wife's brother was staying at Brandy station and it was originally planned to drop him there, but not to stop. Because of the injury which Dr. Hunter had suffered, they did, however, stay over for three days, the reason therefor being, "My neck, the ride in the car would jolt it, and I felt that we would be more comfortable there for a day or two, and then come home." While there he consulted Dr. Kelley of Culpeper, and X-ray pictures were taken. That doctor reported that they did not show any broken bones, but that he had a strained neck and thought that rest and massage would make it alright. He said, "My neck was twisted, when I went to his office, to the right, after taking the X-ray and evidently concluding that there were no bones broken * * * he turned my head around straight and strapped it with adhesive. * * * It was painful when I moved it." He stayed about the house and then went back to his home in Fredericksburg, where he called in his family doctor, Dr. Cole, who examined him and told him that he just had strained muscles, and gave him some salve. Dr. Cole called upon

him frequently. Dr. Hunter was not confined to his bed but it was "five or six weeks before I got out" (of the home) "and around."

He was asked by Mr. Goolrick, "Did you subsequently have reason to believe that your injuries were worse than you at first thought?" and answered:

"Yes, after I got out of the house, or at least after I got to walking around, I still had my neck worrying me—it was giving me trouble. I had some doctor friends in town, and I would meet them occasionally and my trouble would be brought up. I remember Dr. Pratt, a friend of mine and physician * * *. He felt my neck like that and suggested that I possibly might have some further trouble * * * that there might be some displacement."

This was at some time in September, the exact date is not given. He then consulted counsel and was examined by physicians in Richmond, who on February 16, 1932, reported to him that his injuries were serious and permanent.

The insurance company had no contract with Hunter. He claims through Hollingsworth, has his rights and is under his disabilities. A stream can not rise higher than its source. *Phelan* v. *New Amsterdam Casualty Co.* (D. C.) 5 Fed. Supp. 810; *Wainer* v. *Weiner,* 288 Mass. 250, 192 N. E. 497. That is to say, Hollingsworth must have done those things which he contracted to do before Hunter can recover (*Imperial Fire Insurance Co.* v. *Coos County,* 151 U. S. 452, 14 S. Ct. 379, 38 L. Ed. 231), and Hollingsworth had promised to "give immediate written notice" of the accident to the insurer.

The manner in which contracts of insurance should be construed has been so often discussed by this court as to make a restatement of our conclusions unnecessary. We content ourselves with this observation by Prentis, C. J., in *Bawden* v. *American Cent. Ins. Co.,* 153 Va. 416, 150 S. E. 257, 260:

"This court has gone as far as any court in enforcing insurance policies in favor of the assured, and resolving

all fair doubts in favor of the assured in such cases, but this proper rule cannot be so extended as to disregard valid provisions of the contract."

■ No candid mind can be in doubt as to the ordinary meaning of "immediate." A discussion of its definition would darken counsel. But "immediate notice" by the assured at times is impossible. He may have been wholly incapacitated, and so with practical unanimity it is held that "immediate notice" does not mean instantaneous notice but notice given with reasonable dispatch.

■ Unless it is absolutely necessary, a contract should not be construed to contain provisions impossible of performance. This situation is recognized by that under review, where it is said:

"Notice given by or on behalf of the Assured to any authorized Agent of the Corporation, with particulars sufficient to identify the Assured, shall be deemed to be notice to the Corporation, and failure to give any notice required to be given by this Policy within the time specified therein shall not invalidate any claim made by the Assured if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible."

Here we are told just when immediate notice is not required and so the contract itself in substance declares that it must be given in all cases where it is "reasonably possible." The exception emphasizes the meaning of "immediate."

We have already had occasion to deal with the principles here involved. In *Northwestern Nat. Insurance Co.* v. *Cohen,* 138 Va. 177, 121 S. E. 507, 510, it appears that a car was stolen about eight o'clock on Saturday night. Notice of the loss was not given until Monday morning. In a policy of insurance against theft it was provided that the assured should forthwith give notice in writing to the company of his loss. That notice was held to have been

given with reasonable dispatch. We cited with approval this statement from 19 A. L. R., p. 174:

" 'The provision in an automobile theft policy that in the event of loss the assured "shall forthwith give notice thereof in writing" is not unreasonable, in view of the fact that the insurer may desire to investigate the circumstances attending the loss or damage and take steps to repair the machine or recover it. The word "forthwith," as used in such a policy, does not mean instantly, but within a reasonable time, and unless the lapse of time is so long as to be obviously a noncompliance with the contract, then the question whether the notice was given within a reasonable time is for the jury, and it cannot be said as a matter of law that notice of the theft of the insured car was not given within a reasonable time, where written notice was given four days from the time the machine was stolen, and received by the company within five days.' "

*Kennard* v. *Travelers' Protective Association,* 157 Va. 153, 160 S. E. 38, 39, is still more in point. There an accident policy provided that "Whenever a class A member of this association in good standing shall through external violent and accidental means receive bodily injuries which shall independently of all other causes immediately, continuously and wholly disable him from transacting any and every kind of business pertaining to his occupation as shown by the records of this association, he shall be paid for the loss of time occasioned thereby * * *."

On the night of August 6, 1929, Kennard struck his foot against a rocking chair. At that time this accident seemed to be too trivial for notice, but by August 29th, twenty-three days thereafter, his injured foot had become swollen and painful, and on September 6, 1929, he notified the company. It was held that notice came too late and a recovery was denied. Many authorities are there cited dealing with the time in which notice must be given. Attention is called to the fact that this injury was at first deemed inconsequential. Trouble did not develop for

three weeks which was the reason for delay and not until it did develop was there any demand for disability payments.

In *Yanago* v. *Aetna Life Ins. Co.*, 164 Va. 258, 178 S. E. 904, 906, decided March 14, 1935, it appears that notice in writing forthwith of any accident was required. An accident did occur on January 3, 1932, in Norfolk county. On the same day a notice of it was deposited in a rural mail box in that county addressed to the company's agents at Bedford City, Virginia, through whom the policy had been issued. This letter gave the notice required. Its receipt was denied. The court in the course of its opinion said:

"It is highly important that an opportunity should be given an insurer to investigate promptly any claim against it which arises out of an accident. More can usually be learned on the day of its occurrence than could be found out in an indefinite time after months had elapsed.

"There are excellent reasons for this provision, but, if the reasons were not good, the situation would not change. Here is a perfectly plain and voluntary contract, and it is not the court's business to make muddy something clear. While immediate does not mean instantaneous, it does here call for notice with reasonable dispatch."

Notice of motion for judgment was filed on March 1, 1932. That motion was for good cause dismissed, and on March 3rd an additional notice was given to the defendant's agent. A second motion for judgment was filed May 13, 1932, and on it judgment went by default.

The controversy in that case was not over the sufficiency of the later notices. Apparently it was conceded that they came too late. The receipt of the notice by letter which was denied by the defendant, was held to be a jury question and to be sufficient, if shown.

The court in the course of its opinion restated this familiar rule:

"Reasonable time and the necessity for prompt action in fair limits are jury questions. Since notice within a

reasonable time was necessary, we are to determine if it was given."

What is a reasonable time within fair limits? In the *Cohen Case* we held that a delay from Saturday until Monday was reasonable. In the *Kennard Case* a delay from August 6th to September 6th was held to be unreasonable, and in *Yanago's Case* it was not contended that a notice given two months after the accident was prompt notice.

It is not necessary that we re-catalogue authorities there noted. These later cases confirm us in those judgments. *Wainer* v. *Weiner, supra; Friedman* v. *Orient Insurance Co.,* 278 Mass. 596, 180 N. E. 617; *Rushing* v. *Commercial Casualty Insurance Co.,* 251 N. Y. 302, 167 N. E. 450; *Phelan* v. *New Amsterdam Casualty Co.* (D. C.) 5 Fed. Supp. 810; *Sawyer* v. *Travelers' Insurance Co.* (D. C.) 10 Fed. Supp. 848, 849.

As we understand it, the plaintiff's main contention is that his accident was deemed trivial in the beginning and that he was not required to give notice until he found that he had been permanently and seriously injured. There are cases which support him.

In *Farrell* v. *Nebraska Indemnity Co.,* 183 Minn. 65, 235 N. W. 612, it was said that a delay of a year or so might not be fatal. See also, *Baker* v. *Metropolitan Casualty Insurance Co.,* 118 Conn. 147, 171 Atl. 7; *Ball* v. *Employers' Liability Assurance Corp.,* 206 N. C. 90, 172 S. E. 878; *Order of United Comm. Travelers of America* v. *Barnes,* 72 Kan. 293, 80 Pac. 1020, 82 Pac. 1099, 7 Ann. Cas. 809. That is to say, they hold that if after months or years an injury, deemed to be slight, proves to be serious, time yet remains and notice then given is immediate notice. We have had occasion heretofore to consider this doctrine, and said:

"The processes of nature doctrine does not commend itself to us as a logical one. These processes, as some of the cases tell us, are in point of time of infinite variety. If one were bitten by a dog which chanced to be suffering

from rabies, hydrophobia, according to some authorities, might not develop for weeks, and some hold that months might elapse before any evidence of this infection might manifest itself. In such a case could it in reason be said that the plaintiff had been immediately, continuously and wholly disabled? Cancer sometimes develops from a wound after a long interval. Such disability is not immediate and total." *Kennard* v. *Travelers' Protective Association, supra.*

"Substantial compliance with a requirement for prompt notice of accident is a condition precedent to recovery." *Sawyer* v. *Travelers' Insurance Co., supra.*

■ Reasonable construction must be given to every lawful contract. A court can no more change one of insurance than it can a negotiable note. That is to say it should not do so. It should not write after "immediate" something plainly not intended.

Moreover, this injury was never trivial. Hunter said, "My neck was twisted. He (Dr. Kelley) turned my head around straight and strapped it with adhesive." He did not feel well enough to go to his home which was about thirty miles away, but remained at Mr. Borst's, so Mr. Hollingsworth tell us, for four or five days, and upon his return he was confined to his home, or at least was unable to attend to business for several weeks. All of this Hollingsworth, who was his intimate friend, knew.

■■ Again, within reasonable limits the time of delay is a jury question. In the order of June 13, 1933, is this stipulation: "By agreement of counsel for both plaintiff and defendant, all matters of law and fact are submitted to the court for decision, a jury being waived."

Here the judgment of the court has the effect of a jury's verdict. *Hartman* v. *Melfa Banking Co.,* 162 Va. 433, 174 S. E. 653. There was a judgment for the defendant. It is true that the court in its opinion said that since there was no dispute as to the facts the plaintiff was not entitled to recover as a matter of law, but it must have considered

the facts which were before it, and to have made such deductions therefrom as appeared to it proper.

Hollingsworth was not hurt and it probably never occurred to him that he might be sued by his friend and guest, hence there appeared to be no occasion for notice.

We are of opinion that the trial judge was right in holding that this notice was not given with reasonable promptness.

Its judgment should be affirmed and it is so ordered.

*Affirmed.*