The MAYFLOWER INSURANCE COMPANY, Plaintiff,

v.

Roosevelt OSBORNE, Alice Roe Osborne and Rose Marie Osborne, a minor, Defendants.

Civ. A. No. 983.

United States District Court
W. D. Virginia,
Abingdon Division.

April 9, 1963.

H. E. Wilson, Kingsport, Tenn., G. R. C. Stuart, Abingdon, Va., for plaintiff.

David S. Haynes, Bristol, Tenn., and Francis W. Flannagan, Bristol, Va., for defendants.

DALTON, Chief Judge.

This suit is an action for declaratory judgment brought by The Mayflower Insurance Company to determine whether it offers coverage for liability incurred by Roosevelt Osborne to his wife, Alice Roe Osborne, and his stepchild, Rose Marie Roe (also known as Rose Marie Osborne), arising out of his operation of a 1953 Chevrolet automobile on May 23, 1962, in McDowell, Kentucky. The material facts have either been admitted in the pleadings or stipulated by all parties concerned, and, with cross motions for summary judgment having been filed, the case is now ready for a decision by this Court.

The facts are as follows: On May 11, 1962, under the laws of the State of Virginia, Mayflower issued a policy of liability insurance to Alice Roe Osborne on a 1953 Chevrolet owned by her. She, Roosevelt, and Rose Marie are domiciled in Bristol, Virginia, but for some time Roosevelt had been residing in St. Petersburg, Florida, as a result of his employment as a construction worker. On May 22, 1962, Roosevelt joined his family in Bristol, Virginia, so that he and his wife might go to Catlettsburg, Kentucky, to sign some deeds. They took Rose Marie, who is mentally and physically retarded as a result of a childhood disease, on the trip with them. On May 23, 1962, near McDowell, Kentucky, Roosevelt, while driving with Alice's consent, had a collision with an automobile being driven by one Viola Curry. Both Alice and Rose Marie were injured and had to be taken to a nearby hospital where they remained for several days. On May 25, 1962, Roosevelt contacted a Bristol law firm, told them there had been an accident in which his wife and stepchild had been injured, and asked them to investigate it. This action was obviously taken by Roosevelt in his capacity as head of the household on behalf of his two dependents who were still in the hospital, and Mayflower does not contend that such action affects their liability coverage. However, the Bristol attorneys having concluded that Alice and Rose Marie had a good cause of action based on negligence against Roosevelt, and having failed to get the claim settled through Mayflower's adjuster, H. L. March, who did not believe that Roosevelt was legally liable to Alice and Rose Marie on the basis of the facts as revealed in Roosevelt's statement to him and because of the family relationship (apparently he believed that Roosevelt was immune from suits by his wife and child), three suits were instituted against Roosevelt on behalf of Alice and Rose Marie in the Tennessee State Court at Bristol, Tennessee, on August 8, 1962. One of these suits was brought by Alice, as next friend of the 18 year old Rose Marie, for personal injury to Rose Marie; and another was brought by Alice to recover medical expenses and loss of services of Rose Marie; and the third was brought by Alice for personal injuries to herself.

By prearranged agreement with the attorneys representing Alice and Rose Marie in these suits— the same attorneys he had originally called to investigate the accident—Roosevelt traveled from St. Petersburg, Florida, up to Bristol, Tennessee, on August 8, 1962, for the purpose of submitting his person to service of process and jurisdiction of the Tennessee court. He waited at the Bristol, Tennessee, courthouse until the suits were filed and the process in each case

drawn up and served on him by the sheriff. Mr. Haynes, one of the attorneys bringing the suits, was present in the courthouse during this time. Since the Osbornes were domiciled in Virginia and the accident happened in Kentucky, it appears that this was the only method by which Roosevelt could have been effectively served in the Tennessee court actions. Mayflower had no notice of this collusive service until September 6, 1962, when pre-trial depositions were taken in the Tennessee actions, although Mayflower had reserved the right to disclaim coverage as early as August 29, 1962. Immediately upon hearing from Roosevelt about the collusive service, Mayflower, on September 7, 1962, filed the present suit for declaratory judgment, alleging that Roosevelt's voluntary submission to service in Tennessee breached the cooperation clause of the policy [1] and therefore absolved Mayflower of liability in the Tennessee court actions.

Meanwhile other suits were being brought in Prestonburg, Kentucky, by Viola Curry, the driver of the other car involved in the May 23, 1962, accident. And on October 3, 1962, Mr. Harris Howard, a Prestonburg attorney who represented Mayflower and Roosevelt Osborne, individually, pursuant to the same policy under which Mayflower is disclaiming coverage in the present action, wrote Alice and telephoned Roosevelt telling them essentially that as insureds under the Mayflower policy they were obligated to cooperate with him (as the insurance company attorney) in all respects concerning the defense of the Curry suits. Upon his insistence, Roosevelt and Alice attended the trial of those cases in Kentucky, which were settled just before being sent to the jury when Mayflower paid on behalf of Roosevelt

the sums necessary to satisfy Curry. At no time during the course of the defense of the Curry suits did Mayflower undertake to reserve its rights to deny coverage under the policy even though the present action in this Court denying coverage under the same policy in the Tennessee suits had been filed a month previously.

On January 15, 1963, judgments totaling Seven Thousand Dollars ($7,000.00) ($5,000.00 for Alice, $1,000.00 for the infant, and $1,000.00 for Alice for medical expenses, etc., of Rose Marie) were obtained in the Tennessee suits—the $1,000.00 for medical expenses of Rose Marie having been reduced by the trial judge to $500.00, leaving $6,500.00 as the total of the judgments, on which appeals have been perfected in Tennessee. This declaratory judgment action, then, is to determine whether Mayflower must pay the judgments.

Two other factual circumstances should be mentioned. First, Mayflower on August 10, 1962, without notice of Roosevelt's collusive action on August 8, 1962, issued certain medical payment drafts to Alice pursuant to her policy to pay medical bills incurred by herself and Rose Marie after the accident. Second, Mayflower made no attempt to quash the service of process on Roosevelt in Tennessee.

From these facts Mayflower argues that by his prearranged visit to Tennessee for the purpose of accepting service of process, Roosevelt breached his duty to cooperate with Mayflower and thereby relieved Mayflower of its liability under the policy. Plaintiff argues further that even if the cooperation clause were not breached, no payment is required from them to their own named insured as a result of injury sus-

1. *Conditions*

   *     *     *     *     *     *

   5. *Assistance and cooperation of the Insured—Parts I, II, and IV:* The insured shall cooperate with the company and, upon the company's request, attend hearings and trials and assist in making settlements, securing and giving evidence, obtaining the attendance of witnesses and

   in the conduct of any legal proceedings in connection with the subject matter of this insurance. The insured shall not, except at his own cost, voluntarily make payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the accident.

tained through the negligence of an omnibus insured.

The Osbornes present a number of defenses:

1) They first argue that on August 8, 1962, Roosevelt was under no duty to cooperate with Mayflower since prior to that time Mayflower, through its adjuster, H. L. March, had denied that Roosevelt was liable to Alice or Rose Marie.

2) Second, they argue that even if Roosevelt had a duty to cooperate with Mayflower, he did not breach that duty by submitting himself to service of process in Tennessee.

3) Thirdly, they argue that even if his duty to cooperate was breached by Roosevelt on August 8, 1962, Mayflower has waived any rights it may have had to deny liability because of such a breach either a) by defending the Curry suits in Kentucky and demanding the Osbornes' cooperative participation therein without reserving any rights to disclaim liability under the policy, or b) by making medical payments under the policy to Alice on August 10, 1962, or c) by failing to move to quash service of process on Roosevelt in the Tennessee suits.

4) And lastly, they claim that Mayflower is obligated under the terms of the policy to pay for liability incurred by an omnibus insured to the named insured.

Considering defendants' points in inverse order of the foregoing listing:

(1) *Can a named insured recover for injuries inflicted through the negligence of an omnibus insured?*

■ There seems to be a conflict of holding on this question. (See 143 A.L.R. 1394). We do not find that liability coverage is limited in Virginia. It should not be. If A loans B his car, and later B picks A up and heedlessly by wanton negligence in driving such car injures A—should not A be entitled to recover from the insurance carrier who issued the policy?

Va.Code Ann. § 38.1–381 requires that any person using an insured automobile with the consent, express or implied, of the named insured shall be insured " * * * against liability for death or injury sustained, or loss or damage occasioned within the coverage of the policy or contract as a result of negligence in the operation or use of such vehicle by the named insured or by any such person; * * * ", and since Mayflower's policy itself offers insurance against bodily injury sustained by any person, there does not appear to be any reason why Mayflower should not pay its named insured for liability incurred by an omnibus insured.

Unless defeated by non-cooperation, the Court holds that Alice is entitled to protection under the policy for Roosevelt's negligence.

(2) *Did Mayflower waive its rights to deny liability because of the alleged breach of cooperation either a) by defending the Curry suits in Kentucky and demanding Osbornes' cooperative participation therein or b) by making medical payments or c) by failing to quash service of process in Tennessee?*

Assuming, for the sake of argument, that Roosevelt Osborne did breach the cooperation clause on August 8, 1962, when he submitted himself for the service of process in Tennessee, the important question becomes whether Mayflower has waived its right to rely on that breach by a) defending Roosevelt in the Kentucky Curry suits in October, 1962, and demanding and receiving his full cooperation in that defense without reserving any right to deny coverage.

To answer this question, the legal effect in Virginia of a breach of the cooperation clause must be analyzed to determine whether such a breach voids the entire policy at the election of the insurance company, or whether it merely excuses the company, if it elects to take advantage of the breach, from liability in the isolated set of circumstances to which the breach of the cooperation clause relates, leaving the contract of insurance otherwise operative and in effect.

If a breach of the cooperation clause has the former effect, then Mayflower clearly waived any reliance on such a breach by defending Roosevelt in October in the Curry suits in Kentucky without reserving any right to disclaim coverage; if it has the latter effect, then an argument can be made that, even though the Curry suits arose out of the same accident, they did not relate in any way to Roosevelt's breach of his duty to cooperate in the Tennessee suits, and therefore Mayflower's defense in Kentucky did not waive its right to disclaim liability in the Tennessee suits.

█ In determining this question, we must of course be governed by Virginia law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

█ The Virginia Supreme Court of Appeals has issued a clear statement on the foregoing matter. In State Farm Ins. Co. v. Arghyris, 189 Va. 913, 55 S.E. 2d 16 (1949), the court was faced with the question of whether prejudice to the insurer must be shown to have resulted from the insured's breach of the cooperation clause before liability could be disclaimed. The majority rule in this country is that such prejudice must be shown. (See 60 A.L.R.2d 1146, 1154). However, in Arghyris the Virginia court concluded that prejudice was not required because the cooperation clause was *a condition to the continued existence of the contract* and not merely a covenant relevant to damages suffered by the insurer as a result of the breach. In its opinion the Virginia court adopted the following language from a New York opinion written by Judge Cardozo:

"The plaintiff makes the point that the default should be condoned, since there is no evidence that cooperation, however willing, would have defeated the claim for damages or diminished its extent. For all that appears, the insurer would be no better off if the assured had kept its covenant, and made disclosure full and free. The argument misconceives the effect of a refusal. Cooperation with the insurer is one of the conditions of the policy. *When the condition was broken, the policy was at an end, if the insurer so elected.* The case is not one of the breach of a mere covenant, where the consequences may vary with the fluctuations of the damage. There has been a failure to fulfill a condition upon which obligation is dependent." (emphasis added)

Regardless of how this Court may feel about the propriety of applying classic contract principles to modern insurance contracts so that an omnibus insured may completely void an insurance policy by his failure to cooperate after a single accident, the language of the Virginia court is clear and unequivocal. Furthermore it has been adopted by the Court of Appeals for the Fourth Circuit in Grady v. State Farm Mutual Auto. Ins. Co., 264 F.2d 519 (1959). Therefore, if we assume that Roosevelt's breach of the cooperation clause terminated the insurance contract altogether, then if Mayflower elected to take advantage of it, they should not have subsequently defended Roosevelt in Kentucky under the same contract of insurance without reserving any right to disclaim coverage—thus Mayflower waived its right to rely on Roosevelt's breach. Fentress v. Rutledge, 140 Va. 685, 125 S.E. 668 (1924).

█ The insurance company should not be permitted to say that its liability ended under the policy in August and then in October say that it is again effective and call upon the Osbornes for help in Kentucky, and then when the company, with Osbornes' aid, obtains a satisfactory settlement of the Kentucky litigation, to then say we will return to our position in August.

█ As to the effect of Mayflower making medical payments to Alice Osborne on August 10, 1962, this was prior to notice of Roosevelt's alleged breach of cooperation and, therefore, would not constitute a waiver.

█ As to Mayflower's failure to move the Tennessee court to quash the

process, we doubt that this should be considered as a waiver, because Mayflower had the right to seek the relief that it deemed appropriate by this declaratory judgment proceeding in the United States District Court, and we cannot believe that its failure to move for the process in Tennessee to be quashed constituted any waiver of the insurance company's part. Moreover, the defense of the Tennessee actions was under reservation of rights.

(3) *Did Roosevelt Osborne breach his duty to cooperate by submitting himself to service of process in Tennessee?*

There seems to be a conflict of authority on the question of whether voluntary and collusive acceptance of service of process by an insured in a jurisdiction where he could not otherwise be served constitutes a material breach of the co-operation clause. See 56 Michigan Law Review 1210, note 15. The most recent case on the point is apparently Elliot v. Metropolitan Casualty Ins. Co. of N. Y., 250 F.2d 680, 66 A.L.R.2d 1231 (10th Cir., 1957), in which it was held that such action by an insured when coupled with a later falsehood regarding that action did constitute a material breach of the cooperation clause. However, there is authority holding the other way. (See Ohio Casualty Ins. Co. v. Beckufth, 74 F.2d 75 (5th Cir., 1934); Glade v. Gen. Mut. Ins. Ass'n of Des Moines, 216 Iowa 622, 246 N.W. 794 (1933)).

There is absent the factor that Roosevelt Osborne committed a falsehood in the present action, which was present in the Elliot case.

Since we hold there was a waiver on the part of the insurance company of the breach of the cooperation clause, even if such a breach existed, we do not feel that it is necessary to say under the peculiar facts and circumstances of this case whether such a breach existed here by Osborne permitting the process to be served on him in Tennessee.

(4) *Was Roosevelt Osborne under duty to cooperate with Mayflower after August 8, 1962, when the insurance ad-* *juster denied that Roosevelt Osborne was liable to Alice and Rose Marie Osborne?*

Doubtless H. L. March, Mayflower's adjuster, denied insurance coverage because of the relationship of the parties. The adjuster sincerely felt that under the law Mayflower had good defenses on the merits to any legal actions instituted by Alice and Rose Marie Osborne. The adjuster's view of the law was, as it is in most states, that the husband is not liable to the wife and child in tort, but such does not seem to be the law in Kentucky where the accident occurred.

Again, as was said above, this is a moot question in view of the Court's thinking that Mayflower waived its right to rely on the alleged breach of cooperation.

In the Virginia case of Hunter v. Hollingsworth, 165 Va. 583, 183 S.E. 508 (1936), it is stated at 587–588, 509–510:

> (Accident on July 24) " \* \* \* company was not notified of the accident until September 16, 1931. On November 25th following it wrote disclaiming liability because of delay in notice. *After this disclaimer, cooperation was not required.*" (Bracketed material and emphasis added)

While the disclaimer of liability in Hunter related to coverage, it seems a fair reading of the stipulation in this case to conclude that Mayflower's adjuster, H. L. March, refused to pay Alice and Rose Marie prior to the institution of suit, not because he doubted his company's coverage of Roosevelt, but because he felt that based on Roosevelt's account of the accident and/or his relationship with the potential plaintiffs, no liability could be established on the part of Roosevelt to Alice or Rose Marie. In other words, the adjuster thought that Roosevelt had good defenses to a suit by Alice and Rose Marie and that the insurance company could therefore successfully defend him. Obviously such a conclusion by an insurance adjuster does not relieve an insured of his duty to cooperate with his insurer, and the Court's view is that this point is without merit.

*Conclusion*

By reason of the conduct on the part of Mayflower, amounting to a waiver of the breach of the cooperation clause (if broken and the contract ended), this Court concludes that Mayflower elected not to treat the contract as ended but after the alleged breach picked it up again and enlisted Roosevelt's cooperation and aid in the defense of the Kentucky cases, and is estopped from denying that the insurance policy continued in effect and, therefore, is obligated to pay the judgments recovered by Alice Osborne and Rose Marie Osborne in the Tennessee actions, and an order will be entered to that effect.