280 F.2d 469
 UTICA MUTUAL INSURANCE COMPANY, Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Laurie
Cecil, Mary Margaret Shelton (Crowder), William
Marshall Shelton, and Lonza L. Shelton, Appellees.
 No. 8064.
 United States Court of Appeals Fourth Circuit.
 Argued April 26, 1960.
Decided July 13, 1960.
 
 E. Ballard Baker, Richmond, Va. (James I. Moyer, Salem, Va., on brief), for appellant.
 Richard C. Rakes, Roanoke, Va. (Gentry, Locke & Rakes, Roanoke, Va., on brief), for appellee State Farm Mut. Automobile Ins. Co.
 J. Albert Ellett, Roanoke, Va., for appellee Laurie Cecil.
 B. Purnell Eggleston, Roanoke, Va. (Eggleston, Holton & Glenn, Roanoke, Va., on brief), for appellee Mary Margaret Shelton Crowder.
 Before SOBELOFF, Chief Judge, and HAMLEY* and HAYNSWORTH, Circuit judges.
 HAYNSWORTH, Circuit Judge.
 
 
 1
 This controversy between two insurance companies arises out of the contention of the one having the primary coverage that it did not receive written notice of the accident 'as soon as practicable' within the notice requirement of its policy. A jury found that it did, and the question here is whether there was sufficient evidence to support the finding.
 
 
 2
 Mary Margaret Shelton, a 17-year old high school student, resided in Roanoke, Virginia with her grandmother and two uncles, William Marshall Shelton and Houston Shelton. William Marshall Shelton was the owner of a 1950 model Chevrolet upon which Utica Mutual Insurance Company had issued a 'Family Automobile Policy.' Under the terms of this policy, coverage was extended to Mary Margaret, as an additional assured, while driving the Chevrolet or any other automobile not regularly provided for her use.
 
 
 3
 While driving an uninsured Oldsmobile owned by another uncle, Lonza L. Shelton, Mary Margaret collided with a vehicle being driven by Laurie Cecil. Mrs. Cecil suffered personal injuries. She had liability insurance under a policy issued by State Farm Mutual Automobile Insurance Company. This policy contained an uninsured driver endorsement obligating State Farm, within limits, to compensate Mrs. Cecil for injuries sustained by her in a collision with an uninsured motorist.
 
 
 4
 Under these circumstances, if Mary Margaret was legally responsible for Mrs. Cecil's injuries, Mrs. Cecil could look to one company or the other for payment of her damages. Clearly, the primary coverage was Utica's, and that company has the burden of defense and payment if the notice requirement of its policy was met. When Utica denied liability on the ground it had not received timely notice, this action for a declaratory judgment was commenced by State Farm.
 
 
 5
 The collision occurred on November 7, 1958. Written notice of the accident was not given Utica until January 23, 1959, a delay of over two and a half months. Unexplained, such a delay would bar Miss Shelton's rights under Utica's policy,[1] so the particular question before us is the effect of the attempt to justify and explain the delay.
 
 
 6
 On November 10, 1958, William Martin, a representative of State Farm, called on Mary Margaret and her uncle, William. Martin, having information there may have been no policy specifically covering Lonza Shelton's Oldsmobile, inquired about any insurance upon any vehicle owned by a member of the household. William Shelton told him that he had insurance on his Chevrolet. Martin asked to see the policy, explaining that some policies provided family coverage and, if William's was such a policy, it would extend coverage to Mary Margaret as an additional insured. William stoutly contended that his insurance on his Chevrolet had nothing to do with Mary Margaret's accident in Lonza's Oldsmobile. He was adamant in his refusal to let Martin see his insurance policy.
 
 
 7
 There was testimony that after Martin left, Mary Margaret protested mildly that she thought her uncle should have let Martin see the policy. Sometime in December, an attorney she had consulted suggested she bring the policy to him for review. Several times she sought to obtain the policy for this purpose but William Shelton declined to let her have it until mid-January after he had received a renewal policy. He then delivered the old policy to his niece, who took it to the lawyer, who notified Utica of the accident.
 
 
 8
 William Marshall Shelton explained his conduct by reference to (1) his anger when State Farm's representative persistently inquired into things which, in Shelton's eyes, had nothing to do with the matter, (2) his conviction that his insurance could not be applicable, and (3) his fear that if his insurance became involved, it might be cancelled or not renewed. His explanation is hardly justification for his long delay in making inquiry, but the niece was an additional assured under the policy and his neglect should not foreclose her rights if she gave the requisite notice as soon as it was practicable for her to do so.[2]
 
 
 9
 Mary Margaret Shelton explains her failure to do more than she did by reference to the unavailability of the policy to her. She could not get an interpretation of the policy until her uncle permitted her to have it. She knew the agency through which her uncle had procured the insurance. She might have notified that agency of the accident or inquired there about the coverage, but this she felt she could not do without her uncle's permission. She testified she felt it was her uncle's insurance and his business, and that she should do nothing about it against his wishes.
 
 
 10
 The time within which notice is required is flexible, and properly so. When it becomes practicable to give the notice varies with the circumstances. A relatively short delay may be unreasonable in one case, while notice within a much more extended period may be quite impracticable in another. The timeliness of the notice under the literal language of this policy, and of such policies generally, is made dependent upon the situation of the actor. The policy imposes no absolute requirement in terms of a specified number of days; it applies, instead, a standard of reasonableness.[3]
 
 
 11
 Whether a reasonably prudent young girl in Mary Margaret's position might have found it practicable to have given notice sooner seems to us fairly debatable. Another might not have had such regard for the wishes and commands of her uncle, with whom she lived and upon whom, in part, she was financially dependent. But a reasonable girl of her years might well have thought that it was quite impracticable for her to do anything about her uncle's insurance without his consent and cooperation. Mary Margaret continued to seek her uncle's cooperation and she acted promptly when she obtained it.
 
 
 12
 Utica seems to contend that no excuse for delay is valid in Virginia[4] except the physical or mental incapacity of the actor. It may be that one of those circumstances was involved in each case in which the Supreme Court of Appeals of Virginia has specifically held delay excusable. That court, however, has said nothing which intimates that circumstances other than confinement under medical care may not justify delay. The policy contains no such limitation of the extenuating impracticability. Whatever the forces creating the impracticability, if it may be said with objectivity and with reason that the giving of earlier notice was impractical, the delay will not work a forfeiture.
 
 
 13
 Finally Utica contends that the standard of reasonableness should have been applied by the court rather than by the jury. It is too well settled for argument, however, that when admitted facts reasonably permit conflicting inferences, it is for the jury to draw the ultimate inference of fact. Only when the proven facts do not reasonably support a favorable inference does the case become one for the court rather than the jury.[5]
 
 
 14
 Holding, as we do, that the proven facts here reasonably support the jury's finding of ultimate fact, we conclude that judgment was properly entered upon the verdict.
 
 
 15
 Affirmed.
 
 
 
 *
 Sitting by designation of the Chief Justice
 
 
 [1]
 Harmon v. Farm Bureau Mut. Automobile Ins. Co., 172 Va. 61, 200 S.E. 616; Hunter v. Hollingsworth, 165 Va. 583, 183 S.E. 506; Yanago v. Aetna Life Ins. Co., 164 Va. 258, 178 S.E. 904; cf. Mason and Dixon Lones, Inc. v. United States Casualty Co., 199 Va. 221, 98 S.E.2d 702; Temple v. Virginia Auto Mut. Ins. Co., 181 Va. 561, 25 S.E.2d 268; Northwestern Nat. Ins. Co. v. Cohen, 138 Va. 177, 121 S.E. 507
 
 
 [2]
 Lauritano v. American Fidelity Fire Insurance Co., 3 A.D.2d 564, 162 N.Y.S.2d 553
 
 
 [3]
 Mason and Dixon Lines, Inc. v. United States Casualty Co., 199 Va. 221, 98 S.E.2d 702; Temple v. Virginia Auto Mut. Ins. Co., 181 Va. 561, 25 S.E.2d 268; Northwestern Nat. Ins. Co. v. Cohen, 138 Va. 177, 121 S.E. 507; Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co. v. Thornton, 4 Cir., 244 F.2d 823; Standard Accident Ins. Co. v. Alexander, 5 Cir., 103 F.2d 500; Zauderer v. Continental Casualty Co., 2 Cir., 140 F.2d 211; cf. State Farm Mutual Automobile Ins. Co. v. Cassinelli, 67 Nev. 227, 216 P.2d 606, 18 A.L.R.2d 431
 
 
 [4]
 The collision occurred in Virginia. The laws of that state govern us here
 
 
 [5]
 Richmond & Danville Railroad Company v. Powers, 149 U.S. 43, 45, 13 S.Ct. 748, 37 L.Ed. 642; Texas & Pacific Railway Company v. Harvey, 228 U.S. 319, 324, 33 S.Ct. 518, 57 L.Ed. 852; Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; Western Union Telegraph Co. v. Hall, 4 Cir., 287 F. 297; Higashi v. Shifflett, 90 U.S.App.D.C. 302, 195 F.2d 784; St. Louis-San Francisco Ry. Co. v. Passmore, 8 Cir., 177 F.2d 550