Otho R. DAY, Plaintiff,

v.

HARTFORD ACCIDENT & INDEMNITY COMPANY, a Corporation, Defendant.

No. 5487.

United States District Court
N. D. Oklahoma.

Nov. 26, 1963.

Jack I. Gaither, Tulsa, Okl., for plaintiff.

A. M. Covington, Covington & Gibbon, Tulsa, Okl., for defendant.

BOHANON, District Judge.

This is an action by Otho R. Day against Hartford Accident & Indemnity Company. Day obtained a Judgment against Jack Wininger, the defendant's insured, in the Superior Court of Creek County, Oklahoma, Drumright Division, on the 17th day of November, 1960, in the sum of $50,000, which is final and unpaid.

There is no material dispute concerning the facts leading up to the accident and the resulting judgment above mentioned.

On Sunday afternoon, August 30, 1959, there was a violent head-on automobile collision between the vehicle driven by Otho R. Day and one driven by Wayne Cornett, a 16-year-old boy. Day's wife was in the automobile with him and was killed in the collision. Day himself was seriously injured. There were three occupants in the Cornett car, Cornett himself, and two young ladies. One of the girls was killed, and Cornett and the other girl were severely injured. Because of his injuries, Cornett remembers nothing about the accident or how it occurred. Traveling in the same direction as the Cornett car was one driven by Jack Wininger and another by Larry Craven. Jack Wininger's car was 250 feet, according to the Patrolman's report, ahead of the Cornett automobile at the time of the collision and the Craven car occupied by Craven and Cary Greenwood was behind the Cornett car, the exact distance not being clear.

The facts show that all these young people had been at a Dairy Queen Snack Bar some distance from Manford, Oklahoma. The Dairy Queen was a favorite gathering place for young people from Manford. It was on the return trip from the Dairy Queen to Manford when the accident occurred.

The facts show that these young people left the Dairy Queen at approximately the same time and between the Dairy Queen and the point of the accident they had been traveling at relatively high speeds and there was some passing between the cars. Prior to the collision young Wininger had passed both of the other automobiles and at the time of the collision was on his right-hand side of the road approximately 250 feet ahead of the point of impact.

C. E. Wininger, the father of Jack Wininger, at the time was a banker in Manford, Oklahoma, and agent for Hartford Accident & Indemnity Company. There was issued to C. E. Wininger, as named insured, a standard family automobile liability policy with $50,000 and $100,000 coverage for personal injury liability. This policy of insurance was issued to C. E. Wininger with the consent of Hartford, which was required inasmuch as he was the company's agent. It is undisputed that C. E. Wininger was at all pertinent times herein the only agent for Hartford in Creek County, Oklahoma, and was the agent authorized by it to receive and transmit notices of accidents in which Hartford's policyholders were involved.

On the date of the accident, C. E. Wininger questioned his son Jack concerning the accident and particularly asked if the boys were racing, and he was advised by his son that they were not. There were rumors around Manford that perhaps the boys were racing. The other witnesses to the accident were

also questioned and interviewed, and all denied that there was any racing. On the date of the accident it was investigated by T. E. Hall, a Patrolman for the Oklahoma Highway Patrol. The Patrol report lists Jack Wininger as a witness only, who, according to his report, was 250 feet west of the place of impact. It is admitted that neither C. E. Wininger or Jack Wininger gave actual notice to Hartford of the occurrence.

Soon after the accident, the exact date not being shown by the record, Otho R. Day brought suit in the Superior Court of Creek County, Oklahoma, Drumright Division, against Wayne Cornett only. On June 14, 1960, plaintiff in this case took the deposition of Cary Greenwood. During the course of this deposition, Cary Greenwood testified that the boys had been racing just prior to the accident. After the taking of this deposition, and on June 16, an Amended Petition was filed in the Creek County case, wherein Jack W. Wininger and Larry Craven were made defendants. Summons was served on Jack Wininger on June 17, 1960, and it was forwarded on June 18, 1960, to the insurance carrier, Hartford. Cary Greenwood at the trial of the case in Creek County repudiated the testimony he had given in the deposition and at the trial denied that the drivers of the cars were racing. See: Jack Wininger et al. v. Joe B. Day, Adm. et al., Okl., 376 P.2d 206, 376 P.2d 211. Prior to accepting the defense of the Creek County action, Hartford mailed to C. E. Wininger a reservation of rights letter, dated June 22, 1960, reserving all policy defenses. This reservation of rights letter was addressed to C. E. Wininger, the named insured, and not to Jack Wininger, who was also an insured under the policy as a member of the family. It should be noted that in this reservation of rights it is stated: "In view of our telephone dis-

cussion today I will assume this is agreeable to you and your son unless we are notified otherwise." It was stipulated that the policy was in force and effect at the time of the collision and that Jack Wininger was an insured thereunder.

The issues in the case as agreed in the pretrial conference and incorporated in the Pretrial Order are:

1. Was defendant notified of the accident in compliance with the terms of the insurance policy?

2. If the defendant was not notified according to said policy, was there a breach of said policy by reason of such delayed notice?

3. Has defendant waived all policy defenses, and is it estopped to deny coverage for the accident of August 30, 1959?

4. Is plaintiff authorized to bring action in this manner or should he proceed by garnishment in court actions where Judgment was obtained?

The first two issues will be considered together. The term "accident" within the meaning of an automobile liability policy means an undesigned and unforeseen occurrence of an afflictive or unfortunate character resulting in bodily injury to a person or damage to property.[1]

The policy provisions as to notice are: "3. Notice: In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable. In the event of theft the insured shall also promptly notify the police. If claim

1. Chinn v. Butchers Mutual Casualty Co., 190 Misc. 117, 71 N.Y.S.2d 70, 73; Sheehan v. Goriansky, 321 Mass. 200, 72 N.E.2d 538, 173 A.L.R. 497; Chapin v. Ocean Acc. & Guaranty Corp., 96 Neb. 213, 147 N.W. 465, 52 L.R.A.,N.S., 227, 1 C.J.S. Accident pp. 425–427; United States Fidelity & Guaranty Co. v. Briscoe et al., 205 Okl. 618, 239 P.2d 754; Ohio Casualty Ins. Co. v. Marr, 98 F.2d 973, 975 (10 Cir.).

is made or suit is brought against the insured, he shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."

■■ What is a reasonable time for giving notice of an accident depends upon the facts and circumstances of each particular case and is not subject to a more definite or specific answer.[2] The insured in the case at bar admittedly was not involved in an accident in the sense that there was actual contact between his automobile and that of Mr. Day. The insured was a considerable distance ahead of the point where the accident occurred. It seems to be a reasonable rule that if the insured had no knowledge that he was involved in an accident and could not reasonably believe that he was involved therein, he should be excused from giving notice under the provisions of a public liability policy requiring written notice as soon as practicable.[3] The insured in this case acted promptly after he learned a claim was being made against him.

■ It is only reasonable that an insured would not be required or expected to report an accident in which he was not involved. But if he witnesses an accident, such as young Wininger did in this case, but made a reasonable mistake as to his possible liability, the requirements of the policy respecting notice should be liberally construed in his favor and the policy requirements considered fulfilled if he gives notice to the insurance carrier as soon as practicable after he first learns that a claim is being made against him.[4]

An interesting case is Hughey v. Aetna Casualty and Surety Company, 30 F.R.D. 508–509 (Del.). In this case plaintiff borrowed a car from a local car dealer. An accident happened when another car traveling in the opposite direction from plaintiff's car swerved off its right side of the road, jumped a drainage ditch, and then shot back across the road and collided with the car behind plaintiff's car. Plaintiff did not see the accident occur, but as he proceeded on, another car passed him and shouted that an accident had taken place back in the direction from where plaintiff had come. No notice was given to the car owner's insurance carrier. Several months later plaintiff was sued and served with summons and complaint, and four days later the owner's insurance company was given notice of the accident. In discussing the question of alleged delayed notice, the Court said:

" 'In determining this question we should examine the facts and circumstances not through the eyes of a trained insurance adjuster, agent, or a lawyer, but from the point of view of * * * citizen.'

"Under the facts and circumstances presented here, plaintiff's conduct [regarding this] defendant insurer was not palpably unreasonable or unreasonable as a matter of law. Plaintiff was driving a borrowed car. First he did not know he was involved in the accident other than, perhaps, as a witness until he was sued. He did not consider that the policy of the lender of the car cov-

2. 18 A.L.R.2d p. 466, Sec. 16 and cases there cited; Allstate Insurance Co. v. Jahrling, 16 A.D.2d 501, 229 N.Y.S.2d 707, 709; Hughey v. Aetna Casualty & Surety Co., 30 F.R.D. 508, 509 (Delaware); Baker v. Metropolitan Cas. Ins. Co. of N. Y., 118 Conn. 147, 171 A. 7; Frederick v. John Wood Co., 263 Minn. 101, 116 N.W.2d 88; St. Paul & Kansas City Short-Line R. Co. v. United States Fidelity & Guaranty Co., 231 Mo.App. 613, 105 S.W.2d 14, 24.

3. Chinn v. Butchers Mutual Casualty Company, 190 Misc. 117, 71 N.Y.S.2d 70;

Munal Clinic et al. v. Applegate et al., 38 Tenn.App. 280, 273 S.W.2d 712; Ohio Casualty Company v. Marr, 98 F.2d 973 (10 Cir.); Standard Accident Insurance Company v. Turgeon (1 Cir.), 140 F.2d 94.

4. Arnold J. Leytem et al. v. Firemen's Fund Indemnity Company, 249 Iowa 524, 85 N.W.2d 921; Frank Marallo et al. v. Aetna Casualty and Surety Company, Sup., 148 N.Y.S.2d 378; Keith v. Lutzweit, Ohio App., 153 N.E.2d 695; Williams v. Cass-Crow Wing Co-op. Association, 224 Minn. 275, 28 N.W.2d 646.

ered the accident. * * * Plaintiff's borrowed car did not come in contact with any of the three cars involved in the accident. The State Police report describes plaintiff as a witness, not a participant to the accident. Apparently the car that had passed plaintiff proceeded some distance on Basin Road before it struck the car behind plaintiff and also going east. At least plaintiff did not see or hear the accident occur. It is difficult to conclude plaintiff was unreasonable in believing he was not responsible for the accident. He notified defendant insurance carrier as soon as a claim was made against him. I find, under the particular facts of this case, he gave notice of the accident as soon as was practicable."

So in the case at bar I find and conclude that neither the Wininger boy or his father had any reason to believe that he was involved in any way, and certainly he had no reason to believe that any claim would be made against him because of this unfortunate accident. The defendant insurance company was notified of the accident as soon as practicable under the peculiar circumstances of this case, and such notice was in compliance with the terms of the insurance policy.

■ The next contention is made by the plaintiff in this case to the effect that defendant waived all policy defenses, and is estopped to deny coverage for the accident of August 30, 1959. Plaintiff in this case is in no position to make such assertions. The policy was a contract between C. E. Wininger and Hartford, and the plaintiff had no interest therein. Hartford agreed to investigate and defend the case under a reservation of rights and it is between Hartford and the insured only whether Hartford waived any of its defenses. Neither C. E. Wininger or his son, Jack, have ever claimed or contended, so far as this record shows, that the reservation of rights letter referred to herein was not sufficient and effective. At least they understood that Hartford was investigating and defending the action under conditions stated in the reservation, and therefore there was no waiver of policy defenses.

■ It is next contended by Hartford that this action is unauthorized and that plaintiff should proceed by way of garnishment. I am of the opinion that this contention is untenable. The policy of insurance provides by Condition 6, Section I, as follows.

"No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

"Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. * * *"

So under the clear provisions of the policy, supra, the plaintiff had a right to proceed directly against Hartford.

■■ It should be noted that all of the witnesses were available for the trial of the case in Creek County. However, Hartford contends it was prejudiced by not having notice so it could make an immediate investigation. In Hartford's Brief, counsel states: "Certainly that (the admission of Greenwood in his deposition) could have been prevented had counsel for either Craven or Wininger had an opportunity to interview him prior to the time this deposition was taken and had advised him of the consequences." This is a mere conclusion or supposition. The boy was under oath, and it is only reasonable to assume he would tell the truth. No authority in Oklahoma has been found passing upon the question of necessity of showing

prejudice for lack of prompt notice in such circumstances. I conclude that no prejudice has been shown, if such a showing was necessary.

Under the admitted facts and the conclusions reached, Judgment will be entered for the plaintiff.