NATIONAL GRANGE MUTUAL INSUR-
ANCE COMPANY, Plaintiff,

v.

Lacy C. TAYLOR, Jr., an infant, and Jo-
seph Walton Taylor, an in-
fant, Defendants.

No. 67-C-22-L.

United States District Court
W. D. Virginia,
Lynchburg Division.

Sept. 5, 1968.

S. J. Thompson, Jr., Lynchburg, Va.
(Caskie, Frost, Davidson & Hobbs,
Lynchburg, Va., on the brief), for plain-
tiff.

Cary L. Branch, Richmond, Va. (Allen,
Allen, Allen & Allen, Richmond, Va., on
the brief), for defendant Lacy C. Taylor,
Jr.

Edward W. Early, Charlotte, Va., for
defendant Joseph Walton Taylor.

MEMORANDUM OF OPINION
including
FINDINGS OF FACT AND
CONCLUSIONS OF LAW.

BARKSDALE, District Judge.

On December 17, 1966, one of the de-
fendants herein, Lacy C. Taylor, Jr., in-
stituted in the Circuit Court of Char-
lotte County, Va., an action against the
other defendant herein, Joseph W. Tay-
lor, seeking to recover damages for per-
sonal injuries resulting from the wreck
of a 1957 Ford automobile in Charlotte
County on June 9, 1966, while defend-
ants Joseph W. Taylor and Lacy C. Tay-
lor, Jr., and Claude Taylor were riding
in the automobile. Lacy C. Taylor, Jr.,
alleged in that action that Joseph W.
Taylor was operating the 1957 Ford and
that the accident and his injuries result-
ed from his gross negligence. This de-
claratory judgment action has been in-
stituted by National Grange Mutual In-
surance Company of New Hampshire to
determine whether or not the policy is-
sued to Grace D. Taylor, the mother of
Joseph W. Taylor, in force at the time
of the accident, affords coverage to Jo-

seph W. Taylor if damages should be recovered against him by Lacy C. Taylor, Jr., in the damage suit pending in the Circuit Court of Charlotte County. Admittedly, the policy provides coverage to Joseph W. Taylor, he being a relative residing in the same household as his mother, if he were driving the non owned 1957 Ford and operating it "with the permission, or reasonably believed to be with the permission, of the owner, * * *", and the other provisions of the policy had been complied with. The policy provides that, "In the event of an accident, occurrence or loss, written notice * * *, shall be given by or for the insured to the company * * * as soon as practicable * * *"

In this action, National Grange asserts that Joseph W. Taylor is not entitled to coverage under its policy because (1) the automobile was not being driven by him with the permission, or reasonably believed to be with the permission, of the owner, and (2) that even if it should be determined that Joseph W. Taylor is entitled to coverage under the non owned provision of the policy, this coverage is vitiated by his failure to give notice as soon as practicable after the accident.

By stipulation of the parties, trial has been waived and this cause has been submitted to the Court for decision upon the depositions, stipulation, exhibits attached to the stipulation and depositions, and memoranda of counsel. For reasons which will later appear, I am of the opinion that Joseph W. Taylor is entitled to coverage under the policy and that this coverage has not been vitiated by failure to give notice as soon as practicable.

Taking up first the question of whether or not the operation or the automobile on June 9, 1966, by Joseph W. Taylor was with the permission, or reasonably believed to be with the permission, of the owner, the facts as to ownership are somewhat unusual and I find them to be as follows:

In the Spring of 1965, Mrs. Mabel Lee of Rice, Prince Edward County, Va., owned a 1957 Ford car which was titled in her name. Probably in March, she sold this car to Raymond Tharpe of Charlotte Court House, whose wife was Annie Taylor Tharpe, a sister of Claude Taylor. Tharpe paid Mabel Lee the agreed purchase price of $100.00; she delivered her certificate of title to Tharpe, who took the car to the home of a relative at Rice and left it there for two or three months before moving it to his own home at Charlotte Court House where he operated a small automobile body shop. However, Tharpe lost the certificate of title the night of his purchase, and went back to Mabel Lee's house shortly afterwards, probably the following day, with W. Harold Pettus, Jr., a Notary Public, told Mabel that he had lost the certificate of title and wanted to get another one. So she signed an application for a new certificate, which Pettus notarized and had her execute a power of attorney authorizing him to endorse the new title when it came. Raymond Tharpe retained the power of attorney, as well as the new certificate of title in the name of Mabel Lee which shortly afterwards came into his possession, but did nothing about having the Mabel Lee certificate of title transferred until July 11, 1966, when he or Claude Taylor had Pettus, as attorney in fact, endorse the certificate of title to Claude Taylor, and a new certificate of title in his name was promptly issued.

Claude Taylor was in the military service until September 10, 1965. He saw the 1957 Ford at the home of his sister Ann Taylor Tharpe and her husband, and although he had no driver's permit, he agreed to buy the 1957 Ford and pay for it in instalments. He did finish paying for it by April or March 1966, the purchase price being $200.00. While Claude was paying for the car in instalments, Tharpe fixed it up and painted it. However, Claude left it at Tharpe's house until June 9, 1966. Claude worked at Burlington Mills at Drakes Branch on the night shift, until he got off from work at 8:00 A.M., on the morning of June 9th. He had a con-

cussion in the accident which occurred later that day, and remembers nothing about getting the car from Tharpe's place or anything else which happened that day. However, he did go to Tharpe's shop with Joseph W. Taylor and asked him, "Where is the key?". Tharpe replied that the key was in the ash tray. Earlier in the day, Joseph W. Taylor and Claude Taylor were riding around in Joseph's car when his car broke down. Claude said to Joe, "We will go and get my car and bring you on up here.", and further, "I am going to Charlotte Court House in the morning and I will get the license tags to put on it." So Joe took the license tags off his car, walked to Charlotte Court House, and put the tags on the 1957 Ford. Claude had previously told Joseph that he had a car, but Raymond Tharpe was doing some work on it. After Joe's license tags had been put on the 1957 Ford, Joe drove off with Claude. They picked Lacy up at Madisonville and they continued to Appomattox. The three Taylors left Madisonville for Appomattox with Lacy driving. They stopped in Appomattox briefly while Lacy got out and talked to a friend for about five minutes. When Lacy returned to the car, Joe said he was going to drive, and did drive off from Appomattox and was still driving the car at the time of the accident.

*Was the actual operation of the 1957 Ford automobile by Joseph W. Taylor at the time of the accident on June 9, 1966, "with the permission, or reasonably believed to be with the permission, of the owner. * * *"?*

National Grange contends that Joseph W. Taylor's use of the car was not with such permission, and takes the position that:

"(a) Mabel Lee was the 'owner' of the automobile at the time of the accident and Joe did not have her permission, and did not reasonably believe that he had her permission,

"(b) The evidence that Claude was the beneficial owner of the automobile is not credible."

To sustain this position, counsel relies upon three Virginia cases, upon which I will comment briefly:

Thomas v. Mullins, 153 Va. 383, 149 S.E. 494 (1929):

In this case, Thomas had in effect sold an automobile to Mrs. Mullins and had been paid for it. While still in possession of Thomas, the automobile was destroyed by fire, and the question involved was the determination of upon which one the loss should fall. The court said:

"It is a conceded fact that no assignment of title to and notice of transfer of any automobile had been executed on the form prescribed by the motor vehicle commissioner as provided by statute and delivered by defendant to the plaintiff prior to the fire."

Also, it is noteworthy that there had been no delivery of the automobile by Thomas to Mrs. Mullins. The court held that, under these circumstances, Thomas was still the owner of the automobile and must bear the loss. However, the facts there, that there had been no delivery of the automobile, no assignment or delivery of the certificate of title, differentiate this case from the case at bar.

United States v. One Hudson Hornet Sedan (W.D.Va.1953), 110 F.Supp. 41:

I certainly cannot quarrel with the decision in this case, because I decided it. This action was instituted by the United States for the forfeiture of an automobile being used in the violation of the Internal Revenue Laws relating to liquor. Under the law, an order of forfeiture was required, but it appeared that, although the automobile had been delivered to the purchaser, the seller, who held the certificate of title, had neither endorsed nor delivered the certificate of title to the purchaser. Consequently, he petitioned the court for remission or mitigation of the forfeiture. The holder of the title was completely innocent of any wrong doing, nor did he know, nor was he chargeable with any notice, that the automobile would be used in viola-

tion of law. Forfeitures are not favored in the law, and it would have been highly inequitable to have denied the petition for remission or mitigation. Inasmuch as there had been no endorsement or delivery of the certificate of title by the owner to the purchaser, I granted his petition.

Nationwide Insurance Co. v. Storm, 200 Va. 526, 106 S.E.2d 588 (1959):

In this case it appears that:

"The insurance company contends that the formal requisites of Code, § 46–84 'need not be complied with in order to transfer ownership of the motor vehicle from one party to another' ".

The automobile involved had been sold, fully paid for, and delivered, but the certificate of title had neither been endorsed for assignment, nor delivered, at the time of the accident. The court held that the holder of the certificate of title was still the owner of the automobile, but it further held that the purchaser, who had no insurance, was operating the automobile at the time of the accident with the permission of the owner, which resulted in coverage, while a contrary holding would have resulted in no coverage.

It seems to me that the following three Virginia cases definitely refute National Grange's contention that Claude Taylor was not the "owner" of the 1957 Ford car at the time of the accident in the sense that the word "owner" is used in its policy of insurance here in controversy:

In United States Casualty Co. v. Bain, 191 Va. 717, 62 S.E.2d 814 (1951), one of the questions involved was the ownership of a certain truck. The court said:

"At the time the truck in question was purchased, for certain reasons, the Trant Company had the title to the truck placed in the name of its foreman, W. B. Sorey, and upon the title a lien was reserved in its favor for $2,550.42. The evidence discloses very clearly that the Trant Company was the sole owner of the truck and had it placed in the name of Sorey for matters of convenience.

"* * *

"The Insurance Company relies upon the fact that there was a violation of the sole ownership clause of the insurance policy, in that the title to the truck was not in the name of the Trant Company, but in the name of Sorey, and that the Trant Company held only a lien on the vehicle. We do not think there is any merit in this contention. The evidence is uncontradicted that the Trant Company purchased the truck with its own funds and that the title to the truck was placed in Mr. Sorey's name purely as a matter of convenience. Mr. Sorey did not claim to be the owner of the truck. The title certificate was not conclusive of ownership, but only *prima facie*, and we think that it was clearly shown that the Trant Company was the sole owner."

In Scott v. State Farm Mutual Automobile Ins. Co., 202 Va. 579, 118 S.E.2d 519 (1961), the question involved was whether or not a liability insurance policy issued to George E. Bower should be declared void from its inception, because a representation made by Bower in the application for insurance that he was the sole owner of the automobile insured was untrue and material to the risk assumed. The court said:

"The evidence clearly shows that George E. Bower, the insured, was a joint owner of the automobile with his son Robert, and his statement that he was the sole owner of the automobile was untrue. While it is true that the title certificate showed George E. Bower to be the owner of the automobile, it is not conclusive, but only *prima facie* evidence of ownership. United States Cas. Co. v. Bain, 191 Va. 717, 720, 62 S.E.2d 814, 815."

In Buckeye Union Casualty Co. v. Robertson, 206 Va. 863, 147 S.E.2d 94 (1966), again the question was whether or not the insurance policy was void by reason of a false statement in the application. It appeared that Robertson's

parents, who resided in Japan, decided to give him an automobile for his use while he was a college student. Robertson purchased an automobile, the purchase price and cost of insurance and license plates being paid by his mother with the understanding that he was to have exclusive possession and use of the automobile while he was in college and that he would turn it over to his mother when she returned to the United States two years later. The insurance agent filled out the application for a title to the automobile to be issued in the name of the mother and it was mailed to her in Japan. She signed the application and the title was later registered in her name.

The son applied for and obtained a policy of insurance in his name. In discussing the question of whether or not the policy was void on account of a false representation of the son in his application, the court said:

"Buckeye issued the policy with full knowledge of the fact that defendant would have exclusive possession of and control over the automobile and be its sole operator. Its investigation disclosed that defendant's parents were residing in Japan and obviously they would not be operating the car. Defendant was the beneficial owner of the car and had every indicium of ownership even though the registered title was not in his name. We said in United States Cas. Co. v. Bain, 191 Va. 717, 720, 62 S.E.2d 814, 815, and Scott v. State Farm Mut. Auto. Ins. Co., supra, 202 Va., at p. 582, 118 S. E.2d at p. 522, that the title certificate was only prima facie of ownership, and that the presumption of ownership evidenced by the certificate of title may be overcome by evidence that the true owner of the vehicle is a person other than the one in whose name the title is registered. The fact that defendant was not the registered owner of the car was a technicality which was immaterial under the facts and circumstances here. Thus defendant's failure to disclose that the car was registered in his mother's name was not as a matter of law material to the risk assumed by Buckeye."

The case of Wooden v. Government Employees' Insurance Company, decided in the Circuit Court of Arlington County, Va., in 1966, seems to be in harmony with the three cases referred to above. Copies of the Circuit Court's order, the petition of the defendant for a writ of error, plaintiff's brief in opposition, and the order of the Supreme Court of Appeals dated March 7, 1967, denying the writ of error, are attached to defendant's brief. Of course, this case has not been officially reported, so cannot be cited.

■ Upon the basis of the decisions above referred to, I find as a fact and conclude as a matter of law that, at the time of the accident on June 9, 1966, Claude Taylor was the "owner" of the 1957 Ford automobile, as the word "owner" is used in the insurance policy. The fact that the certificate of title was at that time still in the name of Mabel Lee was a mere technicality. She had sold the automobile, been paid in full, delivered possession, and by signing the application for a new certificate of title and executing a power of attorney authorizing the transfer of the new title when issued, she had completely divested herself of any ownership of the automobile. The fact that Claude Taylor procured a new certificate of title on July 11, 1966, while immaterial in itself, demonstrates how completely Mabel Lee had divested herself of ownership. Certainly, Claude Taylor was the "beneficial owner" of the automobile at the time of the accident, and was the "owner" as that term is used in the insurance policy. There is no question of the fact that Joseph W. Taylor was operating the automobile at the time of the accident with the permission of Claude Taylor.

Besides, there does not seem to me to be any question about the fact that, at the time of the accident, Joseph W. Taylor was operating the vehicle with what he "reasonably believed to be the per-

mission of the owner", and I so conclude.

*Notice.*

Coming now to the question of whether or not notice of the accident was given to National Grange "as soon as practicable", I find the facts as follows:

The first notice of the accident, which occurred on June 9, 1966, was on November 11, 1966, which was about five months, or to be exact, 155 days, after the accident. This notice was given by means of a letter to the Company from Lacy Taylor's attorneys who had been retained to institute an action in his behalf against Joseph W. Taylor, and were, of course, desirous of insurance coverage. At the time of the accident, Joseph W. Taylor was eighteen years of age and had only a tenth grade education. He was injured in the accident and hospitalized. He knew his mother had a policy of liability insurance, but he did not know, and had never been told, that his mother's insurance would cover him when driving the automobile of someone else. It never occurred to him that his mother's policy provided coverage for him, or that he should make any report to her insurance carrier. He did promptly report the accident to the Division of Motor Vehicles and thought that this was the only report he was required to make.

## DISCUSSION.

As was said in North River Insurance Co. of New York v. Gourdine, 205 Va. 57, 135 S.E.2d 120, 124:

"Policy provisions that notice of accident be given as soon as practicable and notice of claim or suit be forwarded immediately, only require that insured act within reasonable time, considering all the circumstances. A significant circumstance may be age and capacity for understanding of the insured."

In State Farm Mutual Insurance Co. v. Douglas, 207 Va. 265, 148 S.E.2d 775 (1966), the insured did not notify the insurance company until 65 days after the accident. The insured's excuse for the delay was the difficulty he had in securing certain information from his cousin who was a fellow passenger at the time of the accident. The case was tried by the judge without a jury, and the court said:

"The requirement to give notice of an accident 'as soon as practicable' means that the notice must be given within a reasonable time after the accident. To determine the reasonableness of a delay in giving the required notice, the facts and circumstances in each particular case must be considered."

In affirming, the court said (p. 778):

"We cannot say that the able trial judge, sitting as a jury, was in error in holding in effect that Harvey Timmons had given the defendant notice of the accident as soon as practicable."

Counsel for the plaintiff cites my opinion in Allen v. Maryland Casualty Co., 4 Cir., 259 F.Supp. 505 (1966), wherein I held that there was no coverage by reason of the failure of the insured to give notice as soon as practicable. However, that case is easily distinguishable. There, I was applying Illinois law, which may, or may not, be the same as Virginia law, which is applicable here. And it further appeared that the insurance company did not receive notice of the accident of September 17, 1963 until March 24, 1965, a period of eighteen months, and more than two months after suit had been instituted on January 19, 1965. No reason for this delay was assigned other than that the named insured did not think his policy afforded coverage.

In the case of Utica Mutual Ins. Co. v. State Farm Mutual Auto Ins. Co., 4 Cir., 280 F.2d 469 (1960), our Court of Appeals, applying Virginia law, affirmed a judgment upon a jury's finding that notice given more than two and a half months after an accident, was given "as soon as practicable". Although the circumstances were different, this decision seems quite pertinent in the considera-

tion of the question here presented. There, Mary Margaret Shelton, a seventeen year old high school student, was involved in an accident for which there was coverage under a liability policy issued to her uncle with whom she lived. Mary Margaret thought she should report the accident to her uncle's insurance carrier, but he stoutly contended that his insurance on his automobile had nothing to do with Mary Margaret's accident in another automobile, and refused to let her, or anyone else, see the policy. Mary Margaret knew the agency through which her uncle had procured the insurance. She might have notified the agency of the accident, or inquired there about the coverage, but this she felt she could not do without her uncle's permission. She testified she felt it was her uncle's insurance and his business, and that she should do nothing about it against his wishes. The court said (p. 471):

> "The time within which notice is required is flexible, and properly so. When it becomes practicable to give the notice varies with the circumstances. A relatively short delay may be unreasonable in one case, while notice within a much more extended period may be quite impracticable in another. The timeliness of the notice under the literal language of this policy, and of such policies generally, is made dependent upon the situation of the actor. The policy imposes no absolute requirement in terms of a specified number of days; it applies, instead, a standard of reasonableness.

> "Whether a reasonably prudent young girl in Mary Margaret's position might have found it practicable to have given notice sooner seems to us fairly debatable. Another might not have had such regard for the wishes and commands of her uncle, with whom she lived and upon whom, in part, she was financially dependent. But a reasonable girl of her years might well have thought that it was

quite impracticable for her to do anything about her uncle's insurance without his consent and cooperation. Mary Margaret continued to seek her uncle's cooperation and she acted promptly when she obtained it.

> "Utica seems to contend that no excuse for delay is valid in Virginia except the physical or mental incapacity of the actor. It may be that one of those circumstances was involved in each case in which the Supreme Court of Appeals of Virginia has specifically held delay excusable. That court, however, has said nothing which intimates that circumstances other than confinement under medical care may not justify delay. The policy contains no such limitation of the extenuating impracticability. Whatever the forces creating the impracticability, if it may be said with objectivity and with reason that the giving of earlier notice was impractical, the delay will not work a forfeiture.

> " * * *

> "Holding, as we do, that the proven facts here reasonably support the jury's finding of ultimate fact, we conclude that judgment was properly entered upon the verdict."

■ Following the reasoning of our Court in *Utica*, supra, I find as a fact that the notice in this case was given as soon as practicable. At the time of the accident, Joseph W. Taylor was only eighteen years old, with little education. It never occurred to him, nor did anyone suggest, that his mother's insurance might afford coverage to him while driving the automobile of someone else. He did promptly report the accident to the Division of Motor Vehicles and thought that was the only report he was required to make. It is therefor my conclusion of law that the delayed notice does not vitiate the coverage afforded by the policy of National Grange issued to Joseph W. Taylor's mother, Grace D. Taylor.

An order will be entered accordingly.