**AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

Civ. A. No. 68–C–23–R.

United States District Court
W. D. Virginia,
Roanoke Division.

Oct. 14, 1968.

Robert E. Glenn, Eggleston, Holton, Butler & Glenn, Roanoke, Va., for plaintiff.

S. D. Roberts, Moore, Gentry, Locke, Rakes & Moore, Roanoke, Va., for defendant.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

On November 4, 1966, William B. Cason and Douglas M. Gimbert were allegedly racing their automobiles in a northerly direction on Virginia State Route #117 in Roanoke County, Virginia, when Gimbert's car collided with a car driven by Irvin Warren Simpson at the intersection of Route #117 and Virginia State Route # 116. Simpson, thereafter secured two judgments against Gimbert and Cason, jointly, on the grounds that they negligently caused the accident; one judgment was awarded to Simpson as administrator for the estate of his wife, who was killed in the collision, and the other judgment was awarded to Simpson in his own right. American Mutual Liability Insurance Company [hereinafter referred to as American Mutual] was the liability insurance carrier for Gimbert and has satisfied both of the aforesaid judgments in full. State Farm Mutual Automobile Insurance Company [hereinafter referred to as State Farm] was the liability insurance carrier for Cason, but has refused to pay any part of the two judgments entered against Cason as joint tort-feasor. State Farm denies any liability on its insurance contract, contending that Cason failed to give State Farm notice of the accident as soon as practicable and thereby violated the terms of the insurance contract so as to release State Farm from any liability thereon.

American Mutual now moves this court for judgment against State Farm to require contribution on the said judgments which have been heretofore satisfied by American Mutual. The parties have mutually agreed to waive a trial by jury and submit this case, to the court for decision without a jury.

The court sitting without a jury finds the essential facts of this case to be as follows: Just prior to the accident on November 4, 1966, Cason was traveling east on Melrose Avenue in Roanoke, Virginia, driving a 1965 Pontiac GTO when he came up behind a Mustang driven by Gimbert. Both cars stopped at the red light at the intersection of Route #117 [also known as Peters Creek Road] and Melrose Avenue. When the light turned green, Cason and Gimbert both turned left, heading north on Route #117, a dual highway, with Cason in the left lane and Gimbert in the right lane. The boys accelerated "going through the gears together", which means that they accelerated their cars to the maximum speed possible in each gear before they shifted to the next gear. Shortly after leaving the intersection, the two boys passed a truck. Gimbert switched into the left lane just in front of Cason, passed the truck and then moved back into the right lane. Mr. H. E. Jones, the driver of the truck, testified in his deposition, "They [Cason and Gimbert] passed me at a pretty great deal of speed. I estimate their speed around 70 miles an hour. I was running around 50 and they came past me. * * *" Mr. Jones further testified, "Well, they passed me bumper to bumper, maybe 5 feet." Cason in different depositions has given estimates of their top speed ranging from sixty-five

(65) to eighty (80) miles per hour. A passenger in Cason's car, Miss Deborah Karen Wade, estimated their speed between eighty (80) and ninety (90) miles per hour. Both Cason and Miss Wade testified in depositions that the two cars driven by Gimbert and Cason traveled from the intersection to the scene of the collision never more than approximately one to three car lengths apart.

Both Cason and Gimbert saw Simpson's vehicle coming east on Route #116 crossing the southbound lanes of Route #117 and entering the median strip of Route #117. Then Simpson's vehicle crossed the left northbound lane of Route #117 and entered the right lane where it collided with Gimbert's car. Cason, driving in the left lane, had no contact with either Simpson's or Gimbert's vehicle, but passed through the intersection at approximately the same instant as the cars collided. In fact, Cason heard particles of glass or debris from the collision fall on his rear window as he passed. Cason continued north on Route #117 without stopping at the scene of the accident.

Cason returned to his room after the accident and told his roommate that he had been racing with a Mustang at speeds up to approximately one-hundred and thirty (130) miles per hour when the Mustang had an accident. Subsequently, on several occasions Cason bragged to several different people that he had been racing with a Mustang on the night of November 14, 1966, at speeds in excess of one-hundred (100) miles per hour on Peters Creek Road shortly before the Mustang collided with another car. On the night of the accident, Cason's GTO was equipped with oversized tires on the rear wheels. On the day after the accident, Cason removed the oversized tires, removed an unorthodox bunny license plate from the front, and parked his car behind his apartment building.

Mr. Gimbert instituted suit against Mr. Simpson in the Roanoke County Circuit Court and Cason was subpoenaed as a witness to testify in discovery depositions on February 24, 1967, prior to the trial. Cason stated that one of the attorneys at the discovery proceeding told him he was not involved and need not worry, but that the attorneys had heard that Cason was present when the accident occurred and therefore wanted him as a witness to tell what he had seen or heard. At the end of the discovery proceedings, Cason says that the attorneys told him that he might be involved and that if he were, he would receive the suit papers whereupon he should notify his insurance company. Thereafter, Mr. Simpson by counsel filed a motion for judgment against Cason and Gimbert as joint defendants, and Cason was served with suit papers on March 1, 1967. Cason immediately on the same day took the suit papers to State Farm's claim office in Roanoke, Virginia, thereby notifying State Farm for the first time of the accident 117 days after its occurrence. In Cason's deposition taken on August 22, 1968, he was asked why he didn't report the accident to State Farm sooner. Cason answered:

> Well, I had—didn't—there was no impact between my car or either of the other cars, and I just didn't—you don't report every wreck you see. I wasn't involved in the wreck. I didn't see any reason why I should report it.

Cason has consistently stated that he did not think he was involved in the accident or liable for any damage resulting therefrom.

The provision requiring prompt notice in the State Farm liability insurance contract states:

> In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the in-

sured to the company or any of its authorized agents as soon as practicable.

█ This provision is a standard clause in automobile liability policies, and the cases are uniform in holding that the provision is reasonable and enforceable. North River Ins. Co. of New York v. Gourdine, 205 Va. 57, 135 S.E.2d 120 (1964). Andrews v. Cahoon, 196 Va. 790, 86 S.E.2d 173 (1955). It is a condition precedent, and if the insured does not satisfy the notice requirement, the insurance carrier at its option may deny coverage under the liability policy. Harmon v. Farm Bureau Mut. Automobile Ins. Co., 172 Va. 61, 200 S.E. 616 (1939).

State Farm admits that the required notice was given by Cason but points out that such notice was not given until 117 days after the accident. State Farm contends, therefore, that the notice was not "as soon as practicable."

██ Whether or not the notice was given "as soon as practicable" cannot be determined by a fixed formula. There is no absolute requirement as to the days allowed for notification. The test is necessarily a flexible one depending on the facts and circumstances of each case. Utica Mutual Ins. Co. v. State Farm Mutual Automobile Ins. Co., 280 F.2d 469 (4th Cir.1960); State Farm Mutual Automobile Ins. Co. v. Douglas, 207 Va. 265, 148 S.E.2d 775 (1966). The provision requiring notice is interpreted by the Virginia courts to require that the notice be given within a reasonable time considering all the circumstances. North River Ins. Co. of New York v. Gourdine, supra. Since the reasonableness of the time within which notice is given depends on the circumstances, notice will be considered to be given as soon as practicable even though it is delayed if there is given a reasonable explanation for the delay. State Farm Mut. Automobile Ins. Co. v. Douglas, 207 Va. 265, 148 S.E.2d 775 (1966); Annot., 18 A.L.R.2d 443 at 470.

█ Cason testified that he did not report the accident because he was not involved in it. If Cason truly held this belief and it was a reasonable one under the circumstances, then the delay of 117 days would be excused and the notice considered to be given within a reasonable time in this situation. See Annot., 18 A.L.R.2d 443 at 472; 2 A.L.R.2d. Later Case Service 1128 at 1143 and cases therein cited; also see North River Ins. Co. of New York v. Gourdine, supra. Whether Cason believed himself not to be involved and whether such a belief was reasonable under the circumstances is a question of fact which the court must decide in the absence of a jury. See Utica Mut. Ins. Co. v. State Farm Mut. Automobile Ins. Co., 280 F. 2d 469 (4th Cir.1960).

The court has found no Virginia case involving facts similar to those in the instant case. However, counsel for American Mutual has referred the court to the case of Day v. Hartford Accident & Indemnity Company, 223 F.Supp. 953 (N.D.Okl.1963), affirmed in Hartford Accident & Indemnity Company v. Day, 359 F.2d 484 (10th Cir.1964), which involved a collision between a vehicle driven by Day and another driven by Wayne Cornett, a sixteen year old boy, who was allegedly racing with two other young boys at the time, Jack Wininger and Larry Cranen. Day obtained the judgment against Wininger for injuries resulting from the accident although there was no actual contact with Wininger's car. The three boys, like Cason and Gimbert in the case at bar, had been traveling closely together at relatively high speeds and were allegedly racing. Day v. Hartford Accident & Indemnity Co., 223 F.Supp., supra, at 954. The accident occurred on August 30, 1959, and on June 17, 1960, summons was served on Wininger, whereupon he gave notice to his insurance carrier the following day, June 18, 1960. It thus appears that notice was not given to Wininger's insurance company until almost eight months after the accident. The court in

*Day* held that Wininger reasonably believed that he was not involved in the accident, and that this was an acceptable excuse for the delay, saying:

> It is only reasonable that an insured would not be required or expected to report an accident in which he was not involved. But if he witnesses an accident, such as young Wininger did in this case, but made a reasonable mistake as to his possible liability, the requirements of the policy respecting notice should be liberally construed in his favor and the policy requirements considered fulfilled if he gives notice to the insurance carrier as soon as practicable after he first learns that a claim is being made against him. 223 F.Supp. at 956.

■ Counsel for State Farm have attempted to convince the court that Cason and Gimbert were racing as a matter of law; that a reasonable prudent man would believe that a driver who is racing on the highway would be involved in any accident which is proximately caused by the race; and that therefore, as a matter of law, Cason could not have reasonably believed himself to be uninvolved in the accident. The court agrees that Cason and Gimbert were racing and finds that Cason knew he was racing, but the court cannot agree that Cason could not, as a matter of law, have reasonably believed under the circumstances that he was uninvolved in the accident. It must be remembered that Cason was not a trained insurance agent or adjuster or lawyer. At the time of the accident in question, he was an average eighteen year old student. What constitutes a reasonable belief for him may well be unreasonable for a different driver with other characteristics. Age and capacity for understanding of the insured are circumstances to be considered in determining what is a reasonable belief. North River Ins. Co. of New York v. Gourdine, supra. The legal theory of causation that provides the basis of Cason's liability to Simpson is not one which is easily discernable to the

reasonable prudent man of Cason's age and understanding. The court finds that Cason was not unreasonable in his belief that he was not involved in the accident and not liable for any injuries resulting therefrom. There was no actual contact between his car and the cars involved in the collision. Cason was found liable as a joint tortfeasor because the jury found that he was acting in concert with Gimbert to race and thereby induced Gimbert to speed; thus, Cason's negligent action was a factor which proximately caused the accident. In other words Cason's liability is essentially based on the fact that he helped induce Gimbert to speed. It was not unreasonable for Cason to conclude that Gimbert alone should be liable for any accident or injury resulting from Gimbert's own excessive speed. Realizing the difficulty which attorneys themselves have in determining how far the chain of proximate cause will extend, it is unrealistic to expect a relatively inexperienced youth of eighteen to precisely understand such a complicated area of the law. The court concludes in the absence of a jury that Cason, considering all of the circumstances involved in this case, believed as a reasonable prudent man that he was not involved in the accident.

Counsel for State Farm argue that Cason realized he was partially liable for the accident; otherwise, he would not have removed the identifying oversized tires and bunny license plate nor parked the car behind his apartment house. This action seems inexplicable when viewed along with the statements Cason made to several persons, both friends and strangers, readily admitting that he was racing with Gimbert at high speeds. Why was Cason attempting to hide his car to prevent detection while at the same time admitting and even exaggerating his race with Gimbert to various acquaintances? These actions seem best explained by the realization that Cason feared being caught by the legal authorities—not being sued by Simpson.

He had been greatly exceeding the legal speed limit while racing and knew that he could be subject to serious criminal retribution. Thus, he wanted to prevent detection by the police so as to avoid any criminal prosecution for his racing. The thought of possible civil liability probably never entered Cason's mind as is indicated by the fact that he admitted to several acquaintances that he had been racing with Gimbert, even exaggerating his speeds as high as one-hundred and thirty (130) miles per hour. Apparently, Cason never worried about his acquaintances' reporting his stories to the police.

Counsel for American Mutual have suggested that there was substantial compliance with the terms of the State Farm policy since State Farm did not prove that it was prejudiced by any alleged failure of Cason to give the required notice. Having decided that any delay in giving notice to State Farm was excused by Cason's belief as a reasonable prudent man that he was not involved, it is unnecessary for the court to discuss the issue of prejudice. See generally State Farm v. Arghyris, 189 Va. 913, 55 S.E.2d 16 (1949).

Cason notified his insurance carrier as soon as he learned that a claim was filed against him; in fact, he gave notice approximately three hours after the suit papers were served on him. Having found that Cason believed as a reasonably prudent man under the circumstances that he was not involved in the accident, and that the 117 day delay was therefore excusable, the court finds that State Farm was notified as soon as practicable under the circumstances of this case, and such notice was in compliance with the terms of the insurance policy.

Therefore, upon mature consideration of the facts and for the reasons already given, this court does ADJUDGE and ORDER that William B. Cason, Jr. complied with the terms of the insurance contract with State Farm and that State Farm is liable thereon, and must con-tribute to American Mutual one half of the sum paid heretofore by American Mutual in satisfaction of the two judgments plus interest on such part from the date of payment by American Mutual.